## Scott *versus* Dickson, Administrator, &c.

1. Life insurance, unlike fire or marine insurance, is not a contract for indemnity, but is a contract to pay a certain sum of money in the event of death.

2. A man may insure his own life, paying the premium himself, for the benefit of another who has no insurable interest; such a transaction is not a wagering policy.

3. Where the intent of the insured, at the time he took out the policy, that the insurance should be for the benefit of a friend is apparent, the mere form in which such intent is executed is not essentially material to the validity of the beneficiary's claim under the policy.

4. Where one has an insurable interest at the time an insurance is effected upon the life of another for his benefit, the fact that his interest ceases to exist at or prior to the death of the insured will not deprive him of the right to receive the insurance money as against the personal representatives of the insured.

5. A surety on an official bond has an insurable interest in the life of the obligor. His right to receive the amount of a policy on the obligor's life, issued for his benefit, is not affected by the fact that no breach of the conditions of the bond ever occurred.

6. A. applied for a policy of insurance on his life. When he called to lift the policy, he told the company's agent that he wanted the policy transferred to B. The agent furnished him with a blank form of assignment which A. then and there executed in duplicate, one being forwarded to the company, and the other retained by A., who also retained the policy, and paid all the premiums. Upon A.'s death the insurance company paid the amount of the policy to a stakeholder. In a suit to determine whether A.'s administrator or B. was entitled to the fund:

    *Held*, that while the assignment, as such, was invalid for want of delivery to B., yet, it being apparent that A.'s original intention was to insure his own life for B.'s benefit, the form of the transaction was immaterial, and the assignment would be treated as a direction by A. to pay the money to B., given simultaneously with the issuing of the policy, and with the same effect as if written therein:

    *Held*, therefore, that B. was entitled to said fund.

November 6th, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

    ERROR to the Court of Common Pleas No. 1 of *Allegheny county*: Of October and November Term, 1884, No. 168.

    Assumpsit, by David Dickson, administrator, &c., of Archibald Dickson, deceased, against John F. Scott.

    The parties filed the following case stated, in the nature of a special verdict for the opinion of the court:

Archibald Dickson, bachelor, late of the city of Pittsburgh, died November 1st, 1883, intestate, (so far as yet appears,) leaving two brothers and two sisters, and letters of administration upon his estate were duly granted to one of said brothers, the plaintiff.

On December 30th, 1882, Archibald Dickson made an application to the Mutual Life Insurance Company of New York, through William P. Wooldridge, the Pittsburgh agent of said company, for a policy of insurance upon his life, and a few days later said company issued its policy of insurance, No. 236,992, dated the date of the application aforesaid, and forwarded the same to said Wooldridge for delivery.

A copy of said policy, so far as material to this case is hereto attached, marked Exhibit A, and made part hereof. On January 4th, 1883, Archibald Dickson went to the office of said Wooldridge to lift the policy, and upon its being produced said to Wooldridge that he wanted to transfer it to John F. Scott, "the best friend I have in the world." Wooldridge called the attention of Archibald Dickson to the company's requirement in case of transfer, as printed upon the policy, and then procured two of the blank forms for assignments used by said company, both of which were then filled up and signed by Archibald Dickson. A copy thereof is hereto attached, marked "Exhibit B," and made part hereof. One of the two papers so executed was delivered to Wooldridge, who forwarded it to the general office of the company, where the same was duly received and noted. The other of the two papers so executed, with the policy, remained in the possession of Archibald Dickson until his death. Archibald Dickson himself paid all the premiums upon said policy, notice of maturity of the same as they fell due being sent to him pursuant to his request, made to said Wooldridge at the interview above mentioned. He never told John F. Scott that he had procured or transferred such policy, and the first actual knowledge said Scott had of the existence of the policy or its transfer to himself was after the death of Archibald Dickson.

John F. Scott was not in any manner related to Archibald Dickson by blood or marriage, nor was he at any time a creditor of Archibald Dickson. Said Scott had been for some years a surety upon Dickson's official bond, but the latter had, to the time of his death, faithfully fulfilled the condition of said bond, and neither principal nor sureties were liable thereon.

The said insurance company has paid the sum of four thousand and eleven dollars ($4,011) on proof of loss furnished by defendant at an expense of fifty dollars, and the said par-

[Scott *v.* Dickson.]

ties, plaintiff and defendant, having united in a receipt to said company (made necessary by notice from plaintiff not to pay defendant), have placed the said sum of four thousand and eleven dollars ($4,011) in the hands of William Scott, to be paid, less the cost of proofs of death, to the person entitled thereto, in accordance with the final judgment in this case, but as between said plaintiff and defendant, for the purpose of the questions hereby raised, the same is to be regarded as in the hands of the defendant.

If the court shall be of opinion that the plaintiff is entitled to recover from the defendant the amount paid by said company (less the amount of expenses as aforesaid), upon said policy, then judgment to be entered for plaintiff, and against the defendant, for one dollar; but if the court shall be of opinion that the plaintiff is not entitled to recover as aforesaid, then judgment to be entered for defendant; the costs to follow the judgment, and either party to have the right to sue out a writ of error herein.

### EXHIBIT A.

No. 236,992.

THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK.

Semi-endowment.           Amount, $2000 End.
Age 32 years.                         $4000 Life.

One half annual premium, $57.76.

In consideration of the application for this policy, and of the truth of the several statements made therein, and of the premiums hereinafter specified, promises to pay at its home office, in the city of New York, unto Archibald Dickson, of Pittsburgh, in the county of Allegheny, state of Pennsylvania, or his assigns, two thousand dollars, on the thirtieth day of December, in the year 1902, if then living, at its said office of the company, in the city of New York, or if he should die before that time, then in like manner to pay the sum of four thousand dollars to his executors, administrators, or assigns (any indebtedness to the company on account of this contract to be first deducted therefrom), within sixty days after satisfactory proof at its said office of the death of the said Archibald Dickson during the continuance of this policy upon the following conditions: ( . . . . . )

In witness whereof, the said, The Mutual Life Insurance Company of New York, has caused this policy to be signed by its President and Secretary, at its office in the city of New York, the thirtieth day of December, A. D. one thousand eight hundred and eighty-two.

ISAAC F. LLOYD,                    ROBERT A. GRAMNIS,
.   *Secretary.*                              *Vice President.* ·

[Scott v. Dickson.]

(UPON BACK OF POLICY.)

Provisions and requirements referred to in this policy.

\*    \*    \*    \*    \*    \*    \*

NOTICE.

\*    \*    \*    \*    \*    \*    \*

*Assignments.*—The company declines to notice any assignment of this policy until the original or a duplicate or certified copy thereof shall be filed in the company's home office. The company will not assume any responsibility for the validity of an assignment.

EXHIBIT B.

*Form of Assignment.*

For one dollar, to me in hand paid, and for other valuable considerations (the receipt of which is hereby acknowledged), I hereby assign, transfer and set over to John F. Scott, of Pittsburgh, Pa., all my right, title and interest in this policy, No. 236,992, issued by The Mutual Life Insurance Company of New York, and for the consideration above expressed I do also, for myself, my executors and administrators, guarantee the validity and sufficiency of the foregoing assignment to the above named assignee, h    executors, administrators, and assigns, and their title to the said policy will forever warrant and defend.

Dated in Pittsburgh, this 4th day of January, 1883.

In presence of
GEO. W. RODE. } ARCHIBALD DICKSON.

The court, after argument, entered judgment for the plaintiff as follows :—

August 2d, 1884. Under the facts set out in the foregoing case stated, we are of opinion that plaintiff is entitled to recover, to wit: the amount of $4,011, less the cost of proofs of death, as specified in said statement, and therefore now direct judgment to be entered for plaintiff and against defendant in the sum of one dollar.

The defendant took this writ of error, assigning for error, the said judgment.

*William R. Blair* ( *William Scott* with him), for the plaintiff in error.—We submit that Scott acquired the policy as a gift inter vivos, and became entitled, as against the donor's legal representatives, to receive and retain the money paid by the insurance company. Dickson's assignment, delivered to the company as required by the company's agent, bound not only the company but Dickson himself, who could not thereafter

revoke the assignment without Scott's assent. On the company's books Scott was the beneficiary who alone could make a transfer or collect the insurance money. That Dickson retained a duplicate of the assignment is immaterial, but it was in accord with his intent that Scott should not know of the assignment, and such ignorance by Scott is likewise immaterial. The assignment being for his benefit, his acceptance is presumed and his formal acceptance after Dickson's death is sufficient.

2. The main question below was whether Scott was entitled under the law to retain the proceeds of the policy, and, although no opinion was filed stating the grounds of the decision, the learned Judge stated orally at the argument that he considered the case came within the principle of Gilbert *v.* Moose, 8 Out. 74. But the distinction is that the speculative or wagering feature of the policy in that case is absent here; Scott was ignorant of the fact that the policy had been assigned to him, and therefore innocent of any illegal intent. We submit that Gilbert *v.* Moose and similar cases striking down wagering policies do not affect the heretofore settled rule that a man may insure his own life for the benefit of another, or may assign to another a policy on his life originally taken out by himself: Campbell *v.* Ins. Co., 98 Mass. 381; Forbes *v.* Ins. Co., 81 Mass. 249; Dalby *v.* Ins. Co., 15 C. B. 365; Ashley *v.* Ashley, 3 Sim. 149; St. John *v.* Ins. Co., 13, N. Y. 31; Valton *v.* Ins. Co., 20 N. Y. 32; Ruse *v.* Ins. Co., 23 N. Y. 516; Swick *v.* Home Ins. Co., 2 Dillon 160; Langdon *v.* Ins. Co., 14 Fed. Rep. 272; Conn. Life Ins. Co. *v.* Schaefer, 94 U. S. 457; Page *v.* Burnstine, 102 U. S. 670; Ætna Ins. Co. *v.* France, 94 U. S. 561. In all these cases the test is, whether the transaction was in good faith or to effect some purpose contrary to law or policy. The bona fides here is admitted. The transaction is not attacked by the insurance company, or by a creditor of the insured, but by a volunteer who stands in the shoes of his decedent, who we say had the right to make the gift, and could not and did not attempt to recall it. This court, we submit, will not strike down such a lawful disposition by a man of his own property.

*Slagle* and *George Shiras, Jr.*, (*Wiley* with them), for the defendant in error.—The transaction was not a gift inter vivos, for want of delivery to the donee: Trough's Estate, 75 Pa. St. 117; Campbell's Estate, 7 Pa. St. 101; Helfenstein's Estate, 77 Pa. St. 328. In view of the regulation of the company, leaving a copy of the assignment with them was mere notice to the company, not a delivery to them for the assignee. The company had no right to make such delivery,

[Scott *v.* Dickson.]

but whether they had or not, they never did deliver it, and its effect was mere notice of an unexecuted contract—an intended gift in future, which the donor might recall, and which he never consummated.  Such an executory intent, in the absence of consideration, cannot operate as a declaration of trust, and it leaves the title in the donor unaffected, and the intended donee has no rights:  Lyon *v.* Marclay, 1 Watts 271; Kennedy *v.* Ware, 1 Pa. St. 445; Painter's Estate, 42 Pa. St. 156; Lonsdale's Estate, 29 Pa. St. 407.  As to the question of intent by Dickson, it is important to note that the policy was an endowment policy. $2,000 payable at the end of the year 1902, or $4,000 payable at his death prior to that time.  The retention by Dickson of the policy and assignment and his failure to inform the assignee of its existence, would indicate that his intention was not fully determined, and the direction that he should be notified of premiums as they fell due, and his payment of them, was further evidence of this fact, and also of a continued interest in himself.  It may be that he did not intend the gift to be perfected unless he should die before 1902, at which time, if he was then living, he would be entitled to the sum of $2,000.  He may have thought that the assignment would be good upon his death, and if he lived he could take it to himself.

Even admitting an executed gift, Scott could not receive the benefit of it, as the law has pronounced against the policy of strangers being pecuniarily interested in the death of an insured person:  Gilbert *v.* Moose, 8 Out. 74.  It is true that the reserved point in that case recites that Gilbert, the assignee of Jacobs, the original beneficiary, having no interest in the life insured, held the policy "for the purpose of speculation."  But the court did not base the ruling on that ground, but upon the status of Jacobs, as to whom nothing is said about his taking the policy for speculation; as to him it is placed on the ground that he had no insurable interest.  Besides, it does not appear that there was any evidence that it was held by Gilbert "for purposes of speculation," other than that he had only paid the sum of $28 for it, and agreed to pay the premiums as they fell due.

The test of what is, and what is not a wagering policy, is the insurable interest of the assured.  If he has no interest, it is in its nature speculative; it can be nothing else.  This rule of law is not founded on the presumption that *all* such contracts are fraudulent, but that *some* may be.  To require a party claiming against the holder of a policy, to show not only that he has no interest, but that he intended it as speculation, would strike down the protection of the rule of public policy, and leave each case to be determined by testimony of

[Scott *v.* Dickson.]

the parties to the transaction, who would be interested to uphold it whether in violation of this rule or not: Guardian M. L. Ins. Co. *v.* Hogan, 5 Ins. Law J. 835; Franklin Life Ins. Co. *v.* Lefton, 6 Ins. Law J. 95; Franklin Life Ins. Co. *v.* Hazzard, 41 Ind. 116: Mo. Valley Ins. Co. *v.* Sturges, 6 Ins. L. J. 337; Stevens *v.* Warren, 101 Mass. 564; Ruse *v.* Ins. Co., 23 N. Y. 516. Most of the cases to the contrary are actions against the insurance companies, and a distinction is found in the case of Franklin Ins. Co. *v.* Hazzard, supra, which may reconcile many of the cases. In referring to prior decisions supposed to be to the contrary, the court says: " Doubtless, also, a person may take a policy upon his own life, and by the terms of the policy, appoint a person to receive the money in case of his death during the existence of the policy, as was the case in the Providence Life Ins. Co. *v.* Baum, 29 Ind. 236. As was said in that case, it cannot be questioned that a person has an insurable interest in his own life, and that he may effect such insurance, and appoint any one to receive the money in case of his death during the existence of such policy. It is not for the insurance company after executing such contract, and agreeing to the appointment so made, to question the right of such appointee to maintain the ,action. If there should be any controversy as to distribution among the heirs of the deceased of the sum so contracted to be paid, this does not concern the insurers. This is all in entire harmony with the proposition that a party cannot take by assignment from the insured, and hold for his own benefit a policy on the life of one in whose life he has no insurable interest." In our own courts there is no case in conflict with the principle of Gilbert *v.* Moose, as we understand it. The question in Am. Life and Health Ins. Co. *v.* Robertshaw, 26 Pa. St. 189, was whether a man " may not for an honest purpose use the name of a friend as a trustee for his family in the case of a contract of insurance," in that case for a creditor and the assured's wife. In Cunningham *v.* Smith, 70 Pa. St. 450, the question in this case was not raised. It was admitted that the assignee had an insurable interest, and the only question was to its extent. It was properly decided upon the assumption that Cunningham & Co. had an interest in Smith's life.

In Bond *v.* Bunting, 78 Pa. St. 210, Bunting had an interest in the life insured, as held in Ins. Co. *v.* Kane, 81 Pa. St. 154. The contrariety of opinion in the courts of the country, arises from the attempt to fit the law to special cases. The only safe rule is to hold by good principles. Whenever our courts depart from them for a special case, it opens the door for all manner of ill. The principle that no one shall receive and

retain money upon the insurance of a life in which he has no interest, either directly or by assignment with or without the consent of the person whose life is insured, is sustained by reason and authority, and should be strictly maintained. This principle sustains the judgment of the court below.

Mr. Justice PAXSON delivered the opinion of the court, January 5th, 1885.

While this record does not disclose with certainty the grounds on which the learned judge below ruled the case, we presume from the course of the argument here, that he regarded it as coming within the principle of Gilbert v. Moose, 3 Out. 74, which was an admitted case of a wagering policy. We do not, however, regard this as within the authority of Gilbert v. Moose, for the reason that there is nothing in the facts as set forth in the case stated from which the deduction can fairly be drawn that this was a wagering policy. On the contrary there is enough to show that John F. Scott, the defendant below, had an insurable interest in the life of Archibald Dickson. In the case stated, we find, inter alia, the following facts: "John F. Scott was not in any manner related to Archibald Dickson by blood or marriage, nor was he at any time a creditor of Archibald Dickson. Said Scott had been for some years a surety upon Dickson's official bond, but the latter had, to the time of his death, faithfully fulfilled the conditions of said bond, and neither principal nor surety was liable thereon."

It appears to have been assumed that because there had been no breach of the official bond, and the sureties had never been called upon for payment, that Scott had no insurable interest in the life of Dickson. This was a mistake. The insurable interest is that which existed at the time the insurance was effected, not that which may exist at the time of the death of the assured. There was a time when life insurance was treated as a contract of indemnity merely, and it was held that the interest must continue to the time of death. It was so held by Lord ELLENBOROUGH in Goodsall v. Boldero, 9 East 72. But that case was overruled by Dalby v. The Life Insurance Company, 15 C. B. 365, where it was said by Baron PARKE, in construing the statute of 14 George III., which provides that "no insurance shall be made on the life or lives wherein the assured shall have no interest or by way of gaining or wagering," and "that in all cases wherein the assured hath interest in such life, &c., no greater sum shall be recovered than the amount or value of such interest," that the word "hath" must be construed as necessarily referring to the time of effecting the insurance, and not to the time of

the death. "As thus interpreted," Justice BRADLEY says in
Conn. Life Ins. Co. *v.* Schaefer, 94 U. S. R. 457, "we might
almost regard the English statute as declaratory of the
original common law, and as indicating the proper rule to be
observed in this country where that law furnishes the only
rule of decision." In that case the policy was taken by hus-
band and wife upon their joint lives, payable to the survivor
on the death of either. Subsequently they were divorced *a
vinculo matrimonii*, and the wife having paid the premium
up to the time of her former husband's death, brought suit on
the policy. It was held that the policy, being valid at its
inception, the subsequent cessation of her interest in the life
insured · did not affect her claim, the court saying: "The
essential thing is, that the policy shall be obtained in good
faith, and not for the purpose of speculating upon the hazard
of a life in which the assured· has no interest." This case
expressly rules that the policy does not fall with the cessation
of the interest.

It requires but a moment's reflection to see that this rule is
based upon sound principles. It treats a contract of life
insurance, not as a contract of indemnity, as in the case of
fire or marine insurance, but as a contract to pay a certain
sum of money in the event of death. And if the policy fell
with the cessation of insurable interest it would lead to this
result. A. is a creditor of B. to the extent of $1,000 and
insures his life to that amount. He continues the policy until
he has paid in premiums say $1,100. B. then pays the debt.
If the policy ceases as soon as the debt is paid, A. loses all he
has paid, and in reality is out of pocket $100, although he has
received his debt in full.

Applying these principles to the case in hand, when Mr.
Scott became Dickson's bail on his official bond, he had an
interest in his life which he could have protected by taking
out a policy directly thereon. That he was never called upon
for payment upon this bond is not to the purpose; he might
have been; he was liable for any breach of it, and this lia-
bility constituted an interest in the life of Dickson, and this
interest existed at the time of the alleged assignment of the
policy. Hence I have no doubt if the assignment was effectual
to pass the title to the policy, Scott would be entitled to hold
it and receive the insurance money.

But I more than doubt whether the assignment *qua* assign-
ment was sufficient to pass the title. It was true an assignment
.was made in form and lodged with the company, in accordance
with its rules, but no copy of it was ever given to Scott, nor
was he notified thereof, and the policy was retained by Dickson,
who continued to pay the premiums up to the time of his

death, in pursuance of a request made to the company that the premium notices should be sent to him, Dickson. It was said by Chief Justice GIBSON, In re Campbell's Estate, 7 Barr 100: " A gift is a contract executed; and as the act of execution is the delivery of possession, it is of the essence of the title. It is the consummation of the contract which, without it, would be no more than a contract to give, and without efficacy for the want of a consideration. If made on sufficient consideration it would be a binding agreement; but then the nature of the contract would be changed, and there would still be no gift. The gift of a bond, note, or any other chattel, therefore, cannot be made by words *in futuro* or by words *in præsenti*, unaccompanied by such delivery of possession as makes the disposal of the thing irrevocable."

In Taylor's Appeal, Trough's Estate, 25 P. F. S. 115, Trough effected a life insurance, being solvent; and in consideration of $1 and love and affection for his children, he executed under seal an assignment of the policy to one Hicks in trust for them; put the policy and assignment into an envelope addressed to " John W. Hicks, Plumber, Second street," &c.; " Please send this to him at my death—H. Trough," and placed the envelope in a safe of his own firm. He paid the premiums until his death, seven years after the assignment, but never communicated the transaction to Hicks, who knew nothing of it until after his death. It was held by this court that the assignment was invalid for want of a delivery, and the proceeds were awarded to the administrator of Trough. In Zimmerman v. Streeper, Id. 149, there was an indorsement of a gift upon a bond by the testator, with a request to his executors to deliver it after his death, but it was held invalid for want of a delivery.

In the case in hand the delivery of the assignment to the company was not the equivalent of a delivery to Scott. The whole thing was *in fieri;* there was no consideration, and the assignment being the voluntary act of the assured, was subject to his power of revocation. That circumstances might have arisen which would have made the revocation a matter of some trouble and expense, is not to the purpose. The true test was the right to revoke or cancel the assignment. If that existed, nothing passed to the assignee at the time of said assignment.

There is, however, another view of the case which we think controls it. It is manifest from the case stated that this policy was intended for the benefit of Scott at the time it was taken out. The application was made by Dickson on December 30th, 1882. On the fourth of the following January, only five days thereafter, he went to the office of the company to

[Scott *v.* Dickson.]

lift the policy, and when the policy was produced, he at once informed the company that he " wanted to transfer it to John F. Scott, the best friend I have in the world." Can there be a doubt that he intended the policy for his friend when he made the application ? Had it been made so in form, had he instructed the company to make the loss payable to John F. Scott in case of his death, the transaction would have been perfectly legal, and open to no objection as a wagering policy. The validity of such policies has never been doubted. What followed was the act of the company, not of Dickson. They recommended the assignment as the proper form, and Dickson executed it because it was so recommended. Yet his own conduct shows that he did not regard it as an assignment. The effect of an assignment would be to pass the legal title to the policy had it been perfected by delivery. The assignee thereafter would be the party to pay the premium. But Dickson kept the assignment and continued to pay the premium himself; directed the notices to be sent to him. He evidently intended his friend to have the benefit of the policy, and bear its burdens himself. Had the company altered the policy, making the loss payable to Scott, instead of preparing an assignment they would have carried out Dickson's precise intent. Does the form of the transaction stand in the way? We think not. We may treat the assignment as a direction to pay the loss to Scott, given at the time the policy was issued, with the same form and effect as if written in the body of the policy. If the transfer to Scott were an after-thought it would be different, but it was not; it was a part of the original transaction, and the direction was given before the policy had been taken from the office.

Policies of this nature are in no sense wagering. It would be denying a man's right to do what he will with his own to say that he could not in any form insure his life for the benefit of an indigent relative, or a friend to whom he felt under obligations. And the fact that he continues to pay the premium himself, and retains the control of the policy up to the time of his death, leaves no room for speculation or the improper practices which a few years ago brought such a scandal upon the life insurance business in this state.

The judgment is reversed, and judgment is now entered upon the case stated in favor of the defendant, with costs.

GORDON and TRUNKEY, JJ., dissented.