# Yetter *v.* Delaware Valley Railroad Company, Appellants.

*Equity—Equity practice— Equity rules— Master—Corporation—Elections.*

Since the adoption of the new equity rules the court of common pleas has no power to appoint a master to conduct a corporate election if there is no decree ordering the election; and not even the consent of the parties can give it such power.

*Corporations—Stock—Illegal issue of stock—Constitutional law—Constitution of Pennsylvania, article 16, section 7—Act of May 7, 1887, P. L. 94.*

Under the Act of May 7, 1887, P. L. 94, which was passed to carry into effect section 7, article 16, of the constitution relating to the illegal increase of stock of a corporation, the remedy by proceedings on the part of the attorney general is exclusive, and no suit can be maintained by by stockholders against the corporation to declare stock invalid. The Act of May 4, 1893, P. L. 29, does not give stockholders any such power.

Argued March 10, 1903. Appeal, No. 44, Jan. T., 1903, by defendants, from decree of C. P. Monroe Co., Sept. T., 1902, No. 14, on bill in equity in case of Milton Yetter et al. v. Delaware Valley Railroad Company et al. Before MITCHELL, DEAN, BROWN and MESTREZAT, JJ. Reversed.

Bill in equity for the appointment of a master to conduct a corporate election, and to declare an issue of stock invalid. Before ALBRIGHT, P. J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was the decree of the court.

*A. Mitchell Palmer* and *F. W. Edgar*, for appellant.—The appointment of a master to conduct a stockholders' election without notice to the holders of stock attacked and without any hearing or decree, was without authority: Palethorp v. Palethorp, 184 Pa. 585; Chester Traction Co. v. P. W. & B. R. R. Co., 180 Pa. 432; National Transit Co. v. United States Pipe Line Co., 180 Pa. 224; Com. v. Archbald, 195 Pa. 317.

Individual stockholders may not bring the action provided

for by the act of May 7, 1887, for violation of its terms : Columbia Nat. Bank's App., 16 W. N. C. 357 ; Shannon v. Stevenson, 173 Pa. 419.

Whether the corporate stock of a company has been properly increased in accordance with the constitution and the statutes is a question which the state alone can raise : Pullman v. Upton, 96 U. S. 328 ; Wood v. Corry Water-Works Co., 44 Fed. Repr. 146.

*C. B. Staples*, with him *W. B. Eilenberger*, for appellees.— The court had power to appoint a master : Jenkins v. Baxter, 160 Pa. 199 ; Transit Co. v. Pipe Line Co., 180 Pa. 224 ; Com. v. Archbald, 195 Pa. 317.

OPINION BY MR. JUSTICE BROWN, July 9, 1903 :

The bill in this case was filed on August 29, 1902, and asked simply for the appointment of a master to conduct the annual election of directors by the stockholders of the Delaware Valley Railroad Company to be held on the following Monday, September 1. The allegations were that 5,000 shares of stock had been issued by the company in violation of the constitution and act of assembly, and that sixty-five shares constituted "all the stock legally issued and entitled to participate in the election for directors at the coming annual election." With no notice to the stockholders, whose right to vote was thus challenged, the court, on the day the bill was filed, appointed a master to conduct the election, and directed him to pass upon the legality of the issue of the stock. His decision " as to the propriety of counting " the vote was, according to the court's order, to be final. Not until he appeared at the time and place of holding the election and a copy of the bill and decree appointing him was served upon the president of the railroad company, did the stockholders, whose right to vote had been questioned, have any knowledge of his appointment. He conducted the election and passed upon the legality of the issue of the 5,000 shares of stock, and, having judicially determined that the issue was illegal, denied the holders of them the right to vote. The regularity of the master's appointment was promptly questioned in the court below, and, on this appeal, will first be disposed of, as it is the first question raised.

When the master was appointed the court below ought to have understood that our equity rules, having been adopted by the authority of an act of the legislature, have all the force and effect of a positive enactment, and that all proceedings not in conformity to them are irregular and void : Cassidy v. Knapp, 167 Pa. 305 ; and it ought to have been equally well understood at that time, from admonitions given, that no violation of the rules will be tolerated : Traction Co. et al. v. Phila., etc., R. R. Co., 180 Pa. 432; Palethorp v. Palethorp, 184 Pa. 585. It is true, counsel for the railroad company appeared and consented to the appointment of the master ; but our rules of practice are not to be disregarded even by consent, and, even if they could, in the present case the attorney for the company had no authority to speak for the stockholders, who were the only parties directly affected by the court's order. Rule 60, as amended January 15, 1894, is, that " the office of master in chancery is hereby discontinued, except in proceedings where decrees or interlocutory orders are to be executed, or their execution supervised by an officer of the court." When the appointment of the master was asked for, there was no decree nor interlocutory order pending in the court to be executed. The court had not even ordered the election, but the same was about to take place, as a matter or course, in accordance with the charter or by-laws of the company. Without anything at all before it except the bill, the court at once granted the only prayer it contained by appointing a master to conduct the election, clothing him with judicial functions to pass upon the right of the challenged stockholders to vote. Instead of executing any interlocutory decree or order of the court, the master's commission was, that he himself should decree, in the first instance, at the election, whether the 5,000 shares of stock had been lawfully issued, and pass upon the right of the holders of them to vote. The court had exercised no judicial function whatever, except to appoint him. All the rest was left to him, in the first instance, by his summary appointment, with no notice to those who ought to have been heard. Before the adoption of our present rules the appointment under the circumstances would have been improper, and, since their adoption, it must be regarded as nothing less than a flagrant violation of them, which cannot be overlooked, even if, as is now contended by the ap-

pellees, no harm was done the appellants, in view of the court's subsequent finding that the issue of stock was illegal.

The prayer of the bill, as originally filed, was afterwards enlarged, and, as amended, asked for a decree that the 5,000 shares of stock had been illegally issued. The court passed upon that question as the fundamental and decisive one presented by the pleadings, and made the decree prayed for. In doing so, the learned trial judge said that he had not regarded the appointment of the master and his action as having any bearing upon the question or affecting the trial in any form whatever.

The second question raised on this appeal is as to the right of the appellees, as individual stockholders, to file this bill, the contention of the appellants being that the remedy provided by section 4 of the act of 1887, P. L. 94, is exclusive and must be pursued. In section 7 of article XVI of the constitution, it is declared that "no corporation shall issue stocks or bonds except for money, labor done, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void." This section is not self-executing, and, to give it effect, the Act of May 7, 1887, P. L. 94, was passed. Its second and fourth sections are as follows: "Section 2. That no railroad corporation of this commonwealth, its directors, or officers, shall authorize or make any issue of its capital stock, when such issue is to be in payment for labor done or property received, until after the president of such company shall have filed, in the office of the secretary of the commonwealth, a statement showing in detail the prices paid or to be paid for the several kinds of labor done, and for the property received or to be received, accompanied with the oath or affirmation of himself, and of the chief engineer of said company that the prices, shown by such statement as paid for, the several kinds of labor done, and for the property received or to be received, were not in excess of the prices for which, at the time, the labor was done or the property contracted for, it could have been obtained for money paid, and that no certificate of stock has been or will be issued, in payment for such labor or property, for a larger amount than the actual cash value of the labor, or property, detailed in such statement." "Section 4. That upon complaint of any stock-

holder in any railroad company of this commonwealth, or of any two reputable citizens resident in the region traversed by the line of the railroad of such company, or the traffic of which will be affected by its construction, that the said company is about to issue, or has issued since the passage of this act, either stock or bonds, or other certificates of indebtedness, in contravention of the provisions of this act, or of section seven of article sixteen of the constitution (which complaint shall be in writing, verified by affidavit, and filed with the attorney general of this commonwealth), it shall be the duty of the said attorney general, at once, to institute proper proceedings at law, or in equity, or both, in the name of the commonwealth, to enforce the provisions of this act, and to restrain and prevent the company from consummating or continuing any act, or acts, so alleged to have been done, or to be contemplated, in violation of the terms of this act." The court below, having found as a fact that no certificate had been filed in the office of the secretary of the commonwealth previous to the issuing of the stock, as required by the second section of the act of 1887, concluded, as a matter of law, that the 5,000 shares had been illegally issued and were void.

No question is raised as to the power of the railroad company to issue the stock which the court below found had been illegally issued, but the complaint is made that it was not properly issued. Whether, independently of the fourth section of the act of 1887, if the stock was issued in contravention of the constitution and in violation of the statute, the commonwealth alone can complain, is a question not before us. We are to determine only whether, in view of the specific allegation of the complainants and the finding of the court that the stock has been illegally issued, because section 3 of the act of 1887 had not been complied with, any other remedy for the violation of that section can be pursued than the one pointed out in the act itself. Section 4 specifically points out the remedy for a violation of the provisions of section 3. The statutory requirement upon this subject is, "in all cases where a remedy is provided, or duty enjoined, or anything directed to be done by any act or acts of assembly of this commonwealth, the directions of the said acts shall be strictly pursued:" Act of March 21,

1809, sec. 13, 4 Sm. L. 326.   This requirement applies to rem-
edies in equity as well as at law : Brotzman's Appeal, 119 Pa.
645.   It is, therefore, plain that the proceeding to declare the
stock unlawful ought to have been at the instance of the attor-
ney general when moved to act.   This view would apparently
have been entertained by the court below, if it were not for the
Act of May 4, 1893, P. L. 29, which provides : " That the sev-
eral courts of common pleas of this commonwealth having the
powers of a court of chancery, shall have jurisdiction of all
litigation and disputes between stockholders and parties claim-
ing to be stockholders, and between creditors and stockholders
and creditors and the corporation, of all corporations within
this state ; and in the proceedings before the court in such case,
the service of process upon the company shall be held and con-
sidered as a service upon one of the principal defendants, as pro-
vided in the first section of the act of April sixth, one thousand
eight hundred and fifty-nine, relating to equity jurisdiction
and proceedings."   The conclusion of the court was : " This
case is within the provisions of said act of 1893.   It is a dis-
pute between stockholders and parties claiming to be stock-
holders."   The manifest error of this is that the act of 1893
merely gives jurisdiction.   It makes no change in the require-
ment in the act of 1887 as to who alone can act for a violation
of its provisions.   It is still the attorney general, and it may be
that, in a proper proceeding by him, the common pleas of Mon-
roe might have jurisdiction.   But the question here is not one
of jurisdiction.   It is simply as to the parties who may act, and
this bill, not having been filed by the proper one, should have
been dismissed for that reason.

In view of the foregoing conclusions, the three remaining
questions need not be considered.   The decree of the court be-
low is reversed and the bill is dismissed at the costs of the ap-
pellees, in which are included the costs of this appeal; and there
having been no legal election of directors of the Delaware Val-
ley Railroad Company on September 1, 1902, it is ordered,
adjudged and decreed that the directors in office at that time
be continued by the company until their successors are elected.