## Buse & Caldwell Dissolution Case.

Argued October 6, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Albert C. Hirsch,* with him *C. S. Shumaker, J. Randall Thomas* and *Watson & Freeman,* for appellant.

*O. K. Eaton,* with him *Harbaugh Miller,* for appellees.

OPINION BY MR. JUSTICE LINN, November 12, 1937:

For some time prior to September 5, 1908, George A. Buse and Charles R. Caldwell, the appellant, were partners, Buse's interest being ⅔ and Caldwell's ⅓. On that date they incorporated under the title of Buse &

Caldwell, Buse taking 65 shares, his wife Ella J. Buse 1 share, and Caldwell 34 shares. Buse died March 22, 1933. Letters testamentary were granted to his wife, Ella J. Buse, appellee. On March 31, 1933, she and Caldwell, holding all the capital stock, executed an agreement for the dissolution of the corporation. One of the provisions was as follows: "NINTH: The affairs of the corporation shall be completed by June 30, 1933, and all accounts receivable, notes receivable and other assets not turned into cash at that time, except securities on hand, shall be sold or disposed of, if possible, and if impossible, shall be distributed, in kind, to the parties hereto in the proportion of their respective interests." It was also agreed that "Immediately after June 30, 1933, application for dissolution of the corporation shall be made to the Court of Common Pleas of Allegheny County. . . ." The 11th paragraph was as follows: "Upon completion of the dissolution proceedings, the balance of securities and moneys in the hands of the trustees shall be distributed to the parties hereto in the proportion to their holdings of stock as above recited." On June 24, 1935, such a petition was filed. All corporate obligations except to the three shareholders were satisfied; Buse's estate held 520 shares, Ella J. Buse 8 shares and Charles R. Caldwell 272 shares.[1] All the assets were in hand and partial distribution was made by agreement. The prayer of the petition was as follows: "your petitioners, in conformity with the Act of May 5th, 1933, P. L. 364, apply to your Honorable Court to have the dissolution proceedings of said corporation continued under the supervision of the Court, and matters in dispute herein set forth determined by your Honorable Court, or an auditor to be appoined by the Court, and submit themselves to your Honorable Court for such final decree distributing the assets of said corporation in the hands of its liquidating trustees among the

---

[1] The increased shareholding resulted from stock dividends.

shareholders entitled thereto as your Honorable Court may deem proper under the circumstances." The petition was signed and sworn to by Ella J. Buse and Charles R. Caldwell. Charles R. Caldwell and Malcolm Zander, named as liquidating trustees in the agreement, joined in the petition and certified that the schedule of assets attached to it was correct. Pursuant to the petition the court appointed an auditor.[2] Notwithstanding his agreement, Caldwell objected to the appointment. The court in banc heard argument on the objections and dismissed them. The auditor then took testimony and filed two reports, one supplementary to the other. On exceptions filed by Caldwell the matter again came before the court which dismissed the exceptions. The report of the auditor was adopted and distribution was ordered to be made according to an account or schedule prepared by him. Caldwell appeals.

The first complaint is that the court erred in appointing the auditor. Section 1104 of the Business Corporation Law of 1933, P. L. 364, 15 PS (1936 Supp.), section 2852-1104, provides for the voluntary dissolution of such a corporation and specifies that the board "at any time during the winding up proceedings, may, by petition, apply to any court of common pleas of the county in which the registered office of the corporation is located to have the proceedings continued under the supervision

---

[2] The order was: "And now, to-wit, this 24th day of June, 1935, upon consideration of the foregoing petition, dissolution proceedings of Buse & Caldwell, Inc., are continued under the supervision of this Court, and Charles B. Prichard is appointed for the purpose of hearing and taking testimony relative to the claims of Buse & Caldwell, Inc., against the estate of George A. Buse, deceased, *Buse & Caldwell, Inc., v. Charles R. Caldwell; Ella J. Buse v. Buse & Caldwell, Inc.,* and such other claims as may be presented, to make findings of fact in regard to said claims and report thereon to the Court with recommendations for the distribution of the assets of said corporation among the shareholders, and such other recommendations as may be necessary to effect the dissolution of the aforementioned corporation."

of the court, and thereafter the proceedings shall continue under the supervision of the court, as hereinafter provided in this act." Prior to that act the statutory authority for dissolution was the Act of April 9, 1856, P. L. 293, 15 PS section 501. That act was construed in a number of cases and it was held that it was supplementary to the equity jurisdiction conferred by the Act of June 16, 1836, P. L. 784, section 13, 17 PS section 281, which provides that "The Supreme Court, and the several courts of Common Pleas, shall have the jurisdiction and powers of a court of Chancery, so far as relates to . . . V. The supervision and control of all corporations other than those of a municipal character, and unincorporated societies or associations, and partnerships." See *Titusville Oil Exchange's Dissolution*, 2 Pa. Super. Ct. 508, 516, and 10 Pa. Super. Ct. 496, 503; *Hall v. City Park Brewing Co.*, 294 Pa. 127, 135, 143 A. 582.

The parties to this case, in presenting their petition to have the dissolution proceedings conducted under the supervision of the court as authorized by section 1104, invoked the general equity powers of the court conferred by the Act of 1836; this power was not intended to be limited by section 1108 of the Business Corporation Law of 1933, P. L. 364, 15 PS (1936 Supp.), 2852-1108, which provides: ". . . the court of common pleas shall have all the ordinary powers of a court of equity to issue injunctions, to appoint a receiver or receivers, pendente lite, with such powers and duties as the court from time to time may direct, and to take such other proceedings as may be requisite to preserve the corporate assets and carry on the business of the corporation until a full hearing can be had." Equity Rule 15 provides—"Bills of revivor, cross bills, demurrers, pleas and replications (except as to the last, where new matter has been averred in the answer), shall not be filed in equity, nor examiners, masters or auditors appointed therein, save in those instances where by statute or these rules it is

expressly so provided." The appellant contends that the appointment of the auditor was prohibited by Rule 15, that, while appellant joined in the petition, he objected as soon as the auditor was appointed; that the Equity Rule cannot be set aside, even by consent (relying on *Yetter v. R. R. Co.,* 206 Pa. 485, 487, 56 A. 57) and that the subsequent proceedings were of no effect.

The record is large, and only part has been printed. Our study of it convinces us that the auditor gave it careful consideration. Equity Rule 65 provides for the appointment of a referee or assessor in cases involving complicated accounts: see *Curtis v. Mankus,* 295 Pa. 381, 145 A. 427. Both parties to this case have agreed that an account was necessary. The auditor stated one and it was necessary for him to take evidence to perform that duty. The delegation of power to state an account was consistent with Rule 65; but the powers given in the order of appointment were too broad to the extent that they exceeded the scope of Rule 65 and included powers forbidden by Rule 15. We will therefore not apply the rule that the finding of fact supported by evidence and approved by the court in banc will be accepted here. That error will, however, not require a retrial below. We think a larger view of the situation may be taken in this court without creating a general precedent. As the validity of the claims of the two parties to the dispute turns on the finding of several ultimate facts, we have gone over the evidence *de novo* and, for reasons to be stated, have reached, without any difficulty, a conclusion in which we all concur. This has been done because we think, in the circumstances presented, the public and the parties should not be put to the unnecessary expense of a retrial of the case where that can be avoided without harm or injustice to either party.

Three subjects of claim on the assets for distribution are presented by the record for consideration. (1) Mrs. Buse claims an indebtedness incurred by her husband in

the sum of $13,647.80,[3] as owing by the corporation for advances by him for the corporation's account of what shall be designated as the Modernola Company investment; Mr. Caldwell asserts that the indebtedness was that of Buse alone. The court below allowed the claim. (2) Mr. Caldwell claims that Buse's estate owes the corporation $34,214.34 for taxes that were due by Buse but were paid by the corporation prior to 1927, and that his interest in the distribution should be charged with that amount; at the same time Caldwell states that as the corporation had also paid his taxes in the amount of $11,993.96, his distributive share should be charged in that sum. Mrs. Buse denies liability for this claim, asserting that the payments were voluntary and made by agreement. The court below denied the claim. (3) Mrs. Buse claims a 66% interest in full paid life insurance carried by Buse & Caldwell on Caldwell's life. He contends that the Buse interest should now be converted into cash either by surrendering the policies and dividing the cash surrender value or by permitting him to retain the policies on payment to the Buse interest of its proportion of that value. The court below ordered that the policy be held for the joint interest of both claimants in the ratio of their shareholding.

It is not necessary now to recite all the testimony which we have considered persuasive in reaching our conclusions, though the entire record has been considered in the light of the briefs filed by both sides.

(1) The Modernola Company was a corporation engaged in the talking machine business in Johnstown. In 1919 Buse & Caldwell, the corporation, invested $10,000 in 100 shares of the capital stock of the Modernola Company and, by virtue of that shareholding, Buse became a member of the board of directors. The shares were registered in the corporate name, paid for with corporate funds, carried in the books with other similar in-

---

[3] The face of a note for $12,875.30 with interest.

vestments as a corporate investment and all with the knowledge and participation of Mr. Caldwell. Those facts are not disputed. The present difference between the parties with regard to the Modernola investment arises from later occurrences. The Modernola Company had apparently been very successful and Buse & Caldwell's shareholding had increased by stock divi-dends to 300 shares. Reverses came about 1925. Parties interested in the Modernola Company got into a dispute which resulted in one group buying out the other; the purchasers being 9 of the directors, one of whom was Buse. Title to all of the stock then purchased was taken in the name of a trustee to be relinquished as paid for. It will be recalled that until then Buse's only interest had been as a shareholder of Buse & Caldwell. Mrs. Buse's contention is that Buse was acting in the interest of Buse & Caldwell. Mr. Caldwell now contends that what Buse then did, in joining with others in efforts to save the Modernola Company from failure, was done in Buse's personal interest and not on behalf of Buse & Caldwell. It is elementary that if Buse had made any personal profit out of the purchase he would have held it as trustee for his corporation. The Modernola Company did not recover, and went into the hands of a receiver. Mr. Caldwell thinks Buse's estate should take the loss, which might be a sound position if he had not assented to what Buse did. We have concluded that the record shows that Buse's acts to save or bring back the Modernola Company were done by him in an effort to save something on Buse & Caldwell's investment in 300 shares of the Modernola Stock.

To complete the purchase of the Modernola stock from the dissatisfied shareholders it was necessary to borrow money. Notes were made and endorsed with the result that in the end Buse appeared obligated to the Johnstown Trust Company on a note of $12,875.30, the basis of the claim now under consideration. That was the situation when Buse died. Mrs. Buse took over the debt

and now claims reimbursement from the corporate assets on the ground that all her husband did was done for and on behalf of Buse & Caldwell and with the assent, and, indeed, the participation, of Caldwell.

What is the evidence of Caldwell's assent? He testified that he knew nothing about this transaction until he heard of it in this proceeding, after Mr. Buse's death. Mr. McFeaters testified that Caldwell attended a Modernola Company stockholders' meeting and that he, the witness, discussed the affairs of Modernola Company with Caldwell as late as 1930 with particular reference to this note. He identified cancelled Buse & Caldwell checks drawn by Caldwell, Treasurer, in payment of interest on the note. Mr. Squires, who had been bookkeeper for Buse & Caldwell and who is now employed by Mr. Caldwell's company testified (though with hesitation and reluctance, as we read his examination) that he talked with Caldwell about these interest payments; checks were drawn (generally bi-monthly) to the order of Johnstown Trust Company for interest on the note and were signed by the witness, and by Caldwell as treasurer, and were so entered on the corporation's books; he made no entries indicating that the transactions were Buse's and not the corporation's. Frank B. Kinzey testified that up to 1926 he had been president of the Modernola Company and that at one of the meetings in Johnstown he recalled "Mr. Caldwell making the statement that he came up with Mr. Buse because they were interested in the Modernola proposition." E. M. McCall a public accountant, employed by Main & Company, testified that he made an audit of the accounts of Buse & Caldwell, described their books, and testified to the entries in the books beginning February 11, 1919, recording the Modernola stock purchase as a corporate transaction. He said that on December 31, 1919, $2,375 was charged off and that subsequently the entire purchase price of the stock was charged off and claimed as a loss in the income tax return of the corporation, and

that thereafter payments were made on the Modernola account extending as late as February 27, 1933. Apart now from whether this was a bookkeeping device to furnish ground for the deduction made on the corporate income tax return, it is evidence that Buse & Caldwell continued investing in Modernola after making the charge-off. He also testified that income tax returns (sworn to by Caldwell) contained charges to "Bad Debts" "covering interest on the Modernola Company" investment resulting from the later transaction. The books show that Buse & Caldwell had other investments in shares of stock of other corporations, so that the Modernola account was not their only investment of that character.

On the other hand, Caldwell called a real estate agent, C. E. Horner, who produced a letter signed by Buse on the letterhead of Buse & Caldwell, written June 3, 1927, directing him, in dealing with the subject under consideration, which was the sale of Johnstown real estate belonging to Modernola Company, to "address the writing [writer?] personally, as this matter belongs to his personal attention and not to Buse & Caldwell, and we wanted to keep our files separate and distinct." In view of the other evidence in the record, that letter gives us no difficulty; so considered the letter does not support the suggested inference that Buse was writing about his own property and not about that of the corporation; it is too ambiguous for that and is consistent with a desire on the part of Buse to simplify or facilitate the distribution of the mail at Buse & Caldwell's. Caldwell said he knew nothing about the Modernola note as a corporate matter until after Mr. Buse's death; he knew that payments on account of the Modernola Company were charged off as losses and that credit was taken on the corporation's income tax returns. His explanation was that Buse had stated that he would reimburse the corporation. Confronted with vouchers accompanying checks presented to him for his signature as treasurer

and on their face showing that they were for the Modernola account, he said, "Well, I never read the inside of these vouchers." Referring to his affidavits to the corporate income tax returns in which Modernola expenditures figured, he was asked, "You continued to deceive the Government," and answered "Apparently, yes. You know you can settle with the Government if you make a mistake." Mr. Stratman, Caldwell's brother-in-law, testified that Buse told him that the corporation did not have any liability with regard to the Modernola investment. Although this witness, during the period in question, was the auditor of Buse & Caldwell's books, and conceded that good bookkeeping required that an account should have been carried charging Buse with liability, if in fact he was liable, the witness did not set up such an account. His explanation for not doing it appears to be this: "A. In the first place, they started off with something before we knew what it was about, and then, when the question was raised, then they insisted on carrying it in that way."

The fact is that in many respects both Buse and Caldwell disregarded corporate form and continued as between themselves to deal as partners as they had done prior to their incorporation; Mrs. Buse made no objection. On no other theory can we account for their conduct over many years. To the extent that Caldwell himself testified otherwise, we must lay aside his oral testimony and adopt the written records of the corporation showing his acquiescence and participation. We have also referred to the evidence of other witnesses contradicting Mr. Caldwell.

Mr. Buse, as president of Buse & Caldwell, signed certificates of liability stating that the corporation was "not liable as endorser, or guarantor on any contract or agreement, has not pledged any of its accounts receivable nor contracts and has no law suits or judgments pending against it. . . ." So far as these statements purported to conceal the effect of the entries showing

the interest payments referred to, the statements were untrue, and, in other circumstances than those detailed, might seriously affect the dependence put upon Buse's conduct, but on this record it does not lead us to a different conclusion as to the ultimate fact on which our decision turns.

The contention now made on appellant's behalf that when the Johnstown Trust Company received payment of the amount of the note from Mrs. Buse the note was discharged and cannot be used as a basis of recovery, is without support; the claim to share in distribution is for money paid by Buse for the account of Buse & Caldwell; it is immaterial how or in what form the money was paid; the point is that it was paid for the corporation on an obligation created on its behalf by one authorized, as we have found, so to create it. On this claim we agree with the learned court below.

(2) As to the claim of $34,214.34 paid on account of Buse's taxes. This, as has been stated, was the sum of taxes, both income and taxes on real estate, due by Buse but paid by the corporation and charged to corporate expenses. During the same period similar taxes payable by Caldwell were paid by the corporation in the sum of $11,993.96. These taxes were paid annually from 1916 to 1926. At the same time they were receiving large salaries. Caldwell testified that about 1928 Buse's salary was $20,000 a year and Caldwell's $11,300 per year and that in addition they received reimbursement of other expenses. He was asked "Q. I believe each of you had automobiles, the expense of which was considered a part of the expense of the corporation, Buse & Caldwell? A. Yes." In 1926 or 1927 the government objected to their taking credit for corporate expenses for these tax payments, and while they then discontinued the practice, neither ever reimbursed the corporation for what had been so paid nor were accounts ever set up on their books showing obligations for the payments. They regarded these payments as a distribution of assets:

compare *Stony Brook Lumber Co. v. Blackman,* 286 Pa. 305, 309, 133 A. 556; *Mt. Union Borough v. Kunz,* 290 Pa. 356, 360, 139 A. 118. The payments in dispute were voluntary payments made with the knowledge and consent of all the interested parties in circumstances in which no one else has any standing now to complain: see *Oliver v. Safe Deposit, etc., Co.,* 315 Pa. 552, 173 A. 281; *Donlevy's Estate,* 323 Pa. 173, 185 A. 740. On this point we also agree with the result reached by the learned court below.

(3) As to the division of the life insurance. Insurance had been taken by the corporation on the lives of both Buse and Caldwell, officers and principal stockholders of the corporation. When Buse died, the corporation received the proceeds of the policies on his life. The policies on Caldwell's life in the amount of $25,000 are fully paid and now have a surrender value of slightly more than $17,000. The effect of the order appealed from is to award to Ella J. Buse, individually and as executrix, an interest of 66% and to Charles R. Caldwell an interest of 34% in the policies on Caldwell's life. The appellant contends that the order is unlawful on the ground that Mrs. Buse has no insurable interest in Caldwell's life; he contends that she should be required to accept her share of the cash surrender value. The auditor thought the point was covered by the dissolution agreement which provided: "All securities and other assets of the corporation, except book accounts and notes receivable, shall be appraised at their market value on March 31, 1933. If the trustees deem it necessary or advisable to do so, a portion of the securities may be sold and converted into cash by them, but they shall not sell or otherwise dispose of any securities unless the same be necessary for the payment of the debts or the liquidation and winding up of the affairs of the corporation. It is the understanding of the parties hereto, that said securities, so far as possible will be accepted in distribution in kind."

There is no doubt that the corporation had an insurable interest when the policies were taken out: Act of May 17, 1921, P. L. 682, section 412, 40 PS section 512; *Jones v. Motor Sales Corp. of Johnstown,* 322 Pa. 492, 500, 185 A. 809; and both sides agree, as they must, that the policies are valid. They are property now in court for distribution. As the policies have been valid all along, the principle prohibiting speculative or wagering insurance contracts does not make it unlawful to continue them in force: Compare *Wheeland v. Atwood,* 192 Pa. 237, 43 A. 946; *Bonistalli v. Bonistalli,* 269 Pa. 8, 112 A. 7; *Scott v. Dickson,* 108 Pa. 6; *Corson's Appeal,* 113 Pa. 438, 6 A. 213; *Midland Bank v. Ins. Co.,* 277 U. S. 346, 350. On this point we must also overrule appellant's assignments of error.

There is one point that we are not clear about. The schedule does not include the Modernola investment; it may have been omitted as of no value or not of sufficient value to warrant distribution in kind. But as the result of the order made below and now affirmed increases the holding of Buse & Caldwell from the 300 shares held prior to 1926 by the number of shares resulting from the payment of the Buse note, leave is granted, if the parties wish it, to amend the schedule by taking that situation into account.

The order appealed from is affirmed; the auditor's fee shall be paid, 66% by Ella J. Buse individually and as executrix, and 34% by Charles R. Caldwell; the costs of the appeal shall be paid by the appellant, Charles R. Caldwell.