## Appeal of Corson, Executor of McLean.

1. An insurable interest in the life of another, such as will take the contract of insurance out of the class of wager policies is such an interest, arising from the relations of the party obtaining the insurance, either as creditor of or surety for the assured, or from the ties of blood or marriage to him, as will justify a reasonable expectation of advantage or benefit from the continuance of his life.

2. Where one has an insurable interest at the time an insurance is effected upon the life of another for his benefit, the fact that his interest ceased to exist at or prior to the death of the insured will not, as against the personal representatives of the insured deprive him of the right to receive the insurance money.

3. A nephew does not have an insurable interest in the life of his aunt, arising from the mere relation as such between them.

January 20th, 1886.  Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett, Green and Clark, JJ.

Appeal from the Court of Common Pleas No. 4, of *Philadelphia county:* In Equity: Of January Term 1885, No. 303.

This was an appeal by Robert Corson, executor of Ellen M. McLean, deceased, from a decree of said Court ordering the proceeds of a policy of life insurance on the life of Ellen McLean to be paid to James Garnier. The parties to the bill were Robert Corson, executor of Ellen McLean, deceased, plaintiff, and The Provident Savings Life Assurance Society of New York and James Garnier, defendants. After issue was joined, G. W. Arundel, Esq. was appointed Examiner and Master, who took the testimony in the case and made the following report:

The bill sets forth that Ellen McLean, of the city of Philadelphia, being indebted to the defendant, James Garnier, in the sum of five hundred and nine dollars, in order to secure him in the payment thereof, made application to the Provident Savings Life Assurance Company of New York, one of the defendants, and obtained a policy upon her life for the benefit of the said James Garnier in the sum of two thousand dollars, which policy was duly issued by the company defendants on the seventh day of March, 1883, and numbered 10,674. That subsequently the full amount of the indebtedness above mentioned was paid to the said defendant, James Garnier, and that on the eighteenth day of August, A. D. 1883, the said Ellen McLean died, leaving issue, one son and a daughter, the latter being a minor, and also leaving a last will and testament dated August 6th, 1883, by which she appointed Robert Corson, the complainant in this case, one of the executors; that letters testamentary were subsequently granted to him, and

that after due proofs of the death of the said Ellen McLean were made to the company aforesaid, the said Robert Corson, complainant, demanded from said James Garnier, defendant, the assignment of the aforesaid policy for two thousand dollars, inasmuch as the debt for which it was intended as collateral security had been fully paid and satisfied, and that the said Garnier refused to make the assignment, and further that the said plaintiff has demanded payment also of the company defendant, and that the said company declines to pay the same without the surrender of the policy. The complainant prays the Court that the defendant, James Garnier, be ordered and decreed to assign and surrender to the complainant the above described policy, and that the Provident Savings and Life Assurance Company be ordered and decreed to pay the said complainant the above mentioned sum of two thousand dollars, being the amount of said policy No. 10,674, issued on the life of the said Ellen McLean.

The Provident Savings and Life Assurance Company, defendants, interpose no defence and disclaim any interest in the matter, and to avoid liability for costs have paid the amount of said policy, to wit: Two thousand dollars into Court to await the decision in this suit. The answer of James Garnier, defendant, admits the death of Ellen McLean and the execution of her last will and testament whereby the said Robert Corson was appointed her executor, but denies that the indebtedness of the said Ellen McLean to him has ever been settled or paid, and also further denies that the said policy for two thousand dollars in the Provident Savings and Life Assurance Company of New York, was ever issued, executed or accepted as collateral security for any debt, but that the policy was issued to him by the said company on the life of the said Ellen McLean on the ground of her relationship to him, she being his aunt, and that all costs of the policy and subsequent premiums hereon were paid by him.

From the testimony adduced before the Examiner the Master found the following facts:

James Garnier, the defendant, was a nephew of Ellen McLean, who, prior to the spring of 1880 lived with her two minor children at Lawrence, Massachusetts, where she was employed in a mill. At the instance of Mr. Garnier she came to Philadelphia with her children, he having sent her money for that purpose. After her arrival in this city Mr. Garnier bought a grocery store at Tenth and Manilla streets, fitted it up and stocked it at his own expense, and placed Mrs. McLean in charge; he replenished the stock from time to time, and Mrs. McLean paid him as she got money from the receipts of the store.

This store Mr. Garnier sold at a good price, and Mrs. Mc-Lean received the price. Thereafter Mr. Garnier bought another store for her on Fitzwater street, and fitted it up in the same way, and subsequently sold it for Mrs. McLean's benefit. And thereafter another store was bought by Mr. Garnier on Fifth street below Christian, and fitted up for Mrs. McLean, and the stock replenished from time to time by him. This store was also sold at a good profit and Mrs. McLean received the price. The relationship between Mrs. McLean and Mr. Garnier was most intimate. He was her friend and adviser, and in the language of one of the witnesses was more like a son to her than a nephew. At the instance of Samuel, the son of Mrs. McLean, she had her life insured in the Provident Savings and Life Assurance Society of New York, in two policies—one of them in her own favor, and the other in favor of her nephew, James Garnier, the latter policy was for $2,000, and neither it nor the application for it had any reference to any indebtedness from Mrs. McLean to Mr. Garnier, or that it was taken to secure any indebtedness. In fact, the defendant Garnier, in his answer and his counsel on argument, disclaimed that it was taken out to secure an indebtedness, and avowed that there never had been a settlement between Mrs. McLean and Mr. Garnier, and from the nature of their intimacy could not be, and stated to the Master that if his right to the proceeds of the policy was not otherwise absolute, he would not, and did not, claim it by reason of any indebtedness.

Mrs. McLean died in August, 1883, and the proof of death was made. The insurance company, recognizing their liability on the policy, were about to pay it to Mr. Garnier when the bill in this case was filed. By agreement between the parties, which stands without prejudice to their rights in any respect, the amount of the policy was paid into Court to await the issue of this suit, and the company was relieved as active defendants.

At the time of the preparation of the proof of death, it is testified on the part of the plaintiff that Garnier stated his interest to be that of a creditor to the amount of $500. This Garnier denies, and states that the commissioner who made out the papers told him that it was necessary, under the laws of the state of New York, that he should put in some debt to support his claim as beneficiary. The Master, however, does not think this matter at all material in view of the positive disclaimer of Garnier as aforesaid. The premiums and charges on this policy appear to have been paid by Garnier.

Mrs. McLean made a will just prior to her death, in which

she made disposition of the proceeds of her own policy, but makes no reference whatever to that issued to Garnier.

From a careful consideration of the only question presented in this case by the bill and answer, namely : whether the defendant Garnier had an assurable interest recognized by the law in the life of the said Ellen McLean, and from the evidence adduced before him which fails to establish that the said defendant, James Garnier, had any pecuniary interest in the life of the said Ellen McLean, either by virtue of his relationship or otherwise, in view of the current of decisions in Pennsylvania the Master's decision must be for the complainant. The Master, therefore, recommends to your Honors that a decree be made that from the fund in Court the defendant be reimbursed for the cost of policy and subsequent premiums paid thereon, with interest, and that the remaining portion of said fund be paid to the complainant with costs.

The defendant filed, *inter alia*, the following exceptions to this report :

1. The learned Master has erred in his statement of the case and the law, in this : From a careful consideration of the only question presented in this case by the bill and answer, namely : whether the defendant, Garnier, had an assurable interest recognized by the law in the life of the said Ellen McLean, and from the evidence adduced before him which fails to establish that the said defendant, James Garnier, had any pecuniary interest in the life of the said Ellen McLean, either by virtue of his relationship or otherwise, in view of the current of decisions in Pennsylvania, the Master's decision must be for the complainant.

2. Because the learned Master erred in not finding for defendant and recommending a decree in his favor.

The Court, ARNOLD, J., filed the following decree :

We therefore sustain all his exceptions to the Master's report except the third, and award the sum in Court to him ; the costs, since the fund was ordered to be paid into Court, to be paid by the plaintiff, and the costs prior to that time to be paid out of said fund.

The plaintiff thereupon took this appeal, assigning the decree for error.

*N. DuBois Miller* (*John Sparhawk, Jr.*, with him), for appellant.—It is contended that the defendant is not entitled to the fund, either as nephew of the insured or as creditor. It will be recollected that it was stated before the Master by counsel for the defendants, and the Master so reports, that the defendant claimed nothing by virtue of his being a creditor ; and if his right to the proceeds of the policy was not otherwise absolute,

[Appeal of Corson, Ex'r.]

he would not, and did not, claim it by reason of any indebtedness.

When the insurable interest arises or is implied from relationship, it will be deemed to exist when the relationship is such that the insurer has a legal claim upon the insured for services or for support, even though such legal claim does not exist, yet when from the personal relations of the two, and the kindness and good feeling displayed by the insured to the insurer, the latter has a reasonable right to expect some pecuniary advantage from the continuance of the life of the former, or to bear loss from his death, an insurable interest will be held to exist.

The rule is well stated in Bliss on Life Insurance, p. 33. But it has been held that a man has not an insurable interest in the life of his brother merely as such, though it would be different if he were dependent upon him for support. The same is true of a nephew's interest in the life of an uncle, and the same has been said of a husband in his wife's life : Reserve Mut. Ins. Co. *v.* Kane, 31 P. F. S., 154 ; Lewis *v.* Phœnix Mut. Ins. Co., 39 Conn., 100 ; Halford *v.* Kymer, 10 B. & C., 724 ; Singleton *v.* St. Louis Mut. Ins. Co., 66 Mo., 63.

If, however, the relation of debtor and creditor subsists, and the policy is effected with the privity of the debtor, and it is agreed, or can be inferred, that it is intended as a security, it will belong to the debtor after payment of the debt: Lea *v.* Hinton, DeG. M. & G., 283 ; Morland *v.* Isaac, 20 Beav., 289 ; though the creditor has paid over all the premiums : Drysdale *v.* Piggott, 8 DeG. M. & G., 546, where it was said that " a creditor, preserving a pledge, preserves it for the benefit of the owners, subject to his lien for the debt, and for the expenses incurred in preserving the pledge," and that " the mere non-payments by a mortgagor of a charge attributable to the mortgaged property is not to have the effect of foreclosure."

But the learned Court below denied our right as executor to recover the proceeds of the policy in suit from the defendant, because the contract of the insurance company was made with Garnier, who paid the premium, and, therefore, the legal representatives of the insured, who simply joined in the application, have no interest in or right to the fund, which arises by virtue of no contract with the decedent. But this is not the law of this State, and had the lower Court been made acquainted with all of the facts in Gilbert *v.* Moose's Executors, 13 W. N. C., 489, it would not have so declared.

*William F. Johnson (J. H. Anders* with him), for appellee.— The plaintiff asserts in the first paragraph of his bill that Mrs. McLean, on March 7th, 1883, being indebted to Mr. Gar-

nier in the sum of $509, procured this policy to be issued; that there was an indebtedness at that time, and that there had been an indebtedness from a date long anterior thereto, and that she died his debtor, is patent from every line of the evidence.   Being a creditor at the time of the issuance of the policy, Garnier's right to the proceeds is incontestable: Scott v. Dickson, 16 W. N. C., 181; Ashley v. Ashley, *supra*; St. John v. Ins. Co., 13 N. Y., 31; Clark v. Allen, 17 A. L. R., N. S., 83; Dalby v. Ins. Co., 15 C. B., 365.

That Garnier failed to keep accounts made him no less a creditor; and that he probably never would have asked Mrs. McLean for the money (had she been unable to pay it), in no respect takes away the insurable interest, *qua* creditor, at the time the policy was issued.

It is not to be overlooked that in all the decisions declaring policies void as wagers on the ground of public policy between certain relatives, there is a constant qualification.   In Singleton v. Ins. Co., 66 Mo., 63, it is declared, "mere relation of uncle and nephew do not constitute an insurable interest." In Lewis v. Ins. Co., 39 Conn., 100, that a man has no insurable interest in his brother *per se*; or, as Bliss says (p. 33), merely as such.   The "mere," "*per se*," "merely as such," is constant.   Any interest added saves the policy; so the Court, in Ins. Co. v. France, 4 Otto, 564, in saving an insurance to a sister on the life of her brother, where there was no aspect of dependence either way, says:   "Where the relationship between the parties is such as to constitute a good and valid consideration in law for any gift or grant, the transaction is entirely free from the imputation of a wager policy."   And in Warnock v. Davis, 14 Otto, 779, they qualify an insurable interest.   "Such an interest arising . . . . . from the ties of blood or marriage as will justify a reasonable expectation of advantage or benefit from the continuance of life."

It is broadly declared in Massachusetts that "the force of natural affection between near kindred" will support a policy: 6 Gray, 399; and the highest authority in the land has said: "There is no doubt that a man may effect an insurance on his own life for the benefit of a relative or friend:" Ins. Co. v. Schaeffer, 4 Otto, 460, per BRADLEY, J.

The appellee submits that in whatever aspect his claim to this insurance is considered—either as creditor, relative or appointee of his aunt—the *bona fides* are not assailed, and he is entitled to the affirmance of the decree of the Court below.

Mr. Justice CLARK delivered the opinion of the Court, October 4th, 1886. .

Although a policy of life insurance is not, like a fire or

marine policy, a mere contract of indemnity, but a contract to pay a certain sum of money in the event of death, (Scott *v.* Dickson, 16 W. N. C. 181,) yet, the assured is not entitled to his action on the policy, unless he had, as the basis of his contract, an interest in the subject matter insured; this is a rule founded in public policy, and is of general application: Ruse *v.* Mut. Benefit Co., 23 N. Y., 516; if it were not so, the whole system of life insurance would become the mere cover for wicked speculation by wager in human life, and thus prove the occasion for the commission of the grossest crimes.

An insurable interest, however, is not necessarily a definite pecuniary interest, such as is recognized and protected at law; it may be contingent, restricted as to time, or indeterminate in amount, but it must be actual, such as will reasonably justify a well grounded expectation of advantage, dependent upon the life insured, so that the purpose of the party effecting the insurance may be to secure that advantage, and not merely to put a wager upon human life.

Therefore a wife has an insurable interest in the life of her husband; or the husband in the life of his wife: Baker *v.* Union Mut. Life, 43 N. Y., 283; and a single woman, under contract to marry, in the life of her intended husband: Chisholm *v.* Nat. Life Co., 52 Mo., 213. A parent has in like manner an insurable interest in the life of a child, and a child in the life of a parent: Loomis *v.* Eagle Ins. Co., 6 Gray, 396; Mitchell *v.* Union Life Co., 45 Me., 104; Reserve Mut. Co. *v.* Kane, 31 P. F. S., 154. In the case last cited this Court says:—"It would be technical in the extreme to say that a son has no insurable interest in his father's life. Poverty may overtake the father in his lifetime, and thus both father and mother be cast upon the son, or if the father die before her, the necessity may fall at once upon the son. Why then should he not be permitted to make a provision by insurance, to reimburse himself for his outlays, past or future? What injury is done to the insurance company? They receive the full premium, and they know in such case, from the very relationship of the parties, that the contract is not a mere gambling adventure, but is founded in the best feelings of our nature, and on a legal duty which may arise at any time."

In Lord *v.* Dall, 12 Mass., 115, a young unmarried female, without property, who for several years had been supported and educated at the expense of her brother, who stood to her in *loco parentis*, was held to have an insurable interest in his life.

So also, a creditor has an insurable interest in the life of his debtor: American Life Ins. Co. *v.* Robertshaw, 2 Casey, 189; Cunningham *v.* Smith's Ex'rs., 20 P. F. S., 450. In Keystone

Mut. Ass. *v.* Beaverson, 16 W. N. C., 188, the assured, an un-married lady, lived with her brother, who supported or main-tained her in his family, under circumstances tending to con-stitute the relation of debtor and creditor between them, and it was held, that he had such an insurable interest in her life, as would support a policy of insurance, taken out by him therein. "This case" says the Court, "was not submitted to the jury under a ruling that the mere fact of a person on whose life the policy was taken, being a sister to the defendant in error, gave to the latter an insurable interest in her life, although reputable authorities have recognized such relation-ship to be sufficient: Etna Life Ins. Co. *v.* France, 4 Otto, 562. In the present case, evidence was given that he was support-ing and maintaining her in his family, under circumstances tending to constitute the relation of debtor and creditor. It was under all the facts of the case that the Court held he had an insurable interest in the life of his sister. It is very clear that the insurance was obtained in good faith and not for the purpose of speculating upon the hazard of a life in which he had no interest: Scott *v.* Dickson, *supra*. The policy in question shows the willingness of the company to take the risk on the ground of relationship alone."

The rule deducible from all the cases, is thus stated in Warnock *v.* Davis, 14 Otto, 775, by Mr. Justice FIELD:—It is not easy to define with precision what will in all cases con-stitute an insurable interest, so as to take the contract out of the class of wager policies. It may be stated generally, how-ever, to be such an interest, arising from the relations of the party obtaining the insurance, either as creditor of or surety for the assured, or from the ties of blood or marriage to him, as will justify a reasonable expectation of advantage or benefit from the continuance of his life. It is not necessary that the expectation of advantage or benefit should be always capable of pecuniary estimation; for a parent has an insurable interest in the life of his child, and a child in the life of his parent; a husband in the life of his wife, and a wife in the life of her husband. The natural affection in cases of this kind is con-sidered as more powerful—as operating more efficaciously—to protect the life of the insured than any other consideration. But in all cases there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuni-iary or of blood or affinity, to expect some benefit or advan-tage from the continuance of the life of the assured. Otherwise the contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured. Such policies have a tendency to create a desire for the event.

They are, therefore, independently of any statute on the subject, condemned, as being against public policy.

It cannot be pretended that Garnier had an insurable interest in the life of his aunt, by force of the mere relationship existing between them; no case has been brought to our notice, which carries the rule to this extent. Between husband and wife, and parent and child, the relationship is so close and intimate, and the mutual dependence and legal liability for support so manifest, that nothing more is wanting to establish the insurable interest. Garnier, however, did not hold any such relation to Ellen M'Lean, either natural or assumed; he was simply her "friend and adviser." He was doubtless a valuable friend; he had advanced money to bring her to Philadelphia; he fitted up, stocked, and from time to time, replenished the store at Tenth and Manilla; having disposed of this for her benefit, he purchased the establishment on Fitzwater; and, selling this, he bought for her a third, on Fifth below Christian. She repaid Garnier, however, for his outlays, in her behalf, from time to time, from the ordinary receipts of the several stores, and from the proceeds of the sales.

The only relation existing between James Garnier and Ellen McLean. which could give Garnier an insurable interest in her life, was that of debtor and creditor, and upon this ground alone the case must be considered. It is not denied that at the date of the policy Mrs. McLean was indebted to Garnier, for money advanced and expended in her behalf, in some amount between $500 and $750. It is said, however, in his answer that Garnier disclaims as a creditor; that he places his right to the proceeds of the policy on other grounds, and makes no claim whatever by reason of any indebtedness. We do not so understand either the answer or the evidence, given by the defendant in the case. The bill charges, in the first paragraph, in substance, that the policy was taken out and applied as a collateral security to the debt, which Mrs. McLean then owed Garnier, and in the subsequent paragraphs, that the debt having been fully paid in the lifetime of the assured, the proceeds of the policy should pass into her estate. This fact is specifically denied; the defendant, in his answer, says it is "not true that the policy of insurance referred to in paragraph one of the complainant's bill was applied for, and issued upon, the life of Ellen McLean for any such reason or purpose as therein stated."

It is undisputed, however, that at the issuing of the policy the relation of debtor and creditor did exist, and to the extent stated; the defendant having denied that the policy was taken as collateral security for that debt, a question of fact is thus

raised to be determined by the evidence. Upon examination of the proofs, we find no evidence from which the fact might be fairly inferred. The insurance was not effected at the instance of Mrs. McLean, but at the suggestion of her son Samuel McClatchy, in whose name a second policy in $1,000 was at the same time issued. The premiums were paid and the policy maintained by Garnier; indeed, there is not the slightest proof in support of the plaintiff's hypothesis, that the policy was held in trust for the debtor, and, in the absence of such proof, the presumption is that the rights of the parties appear upon the face of the policy: Cunningham v. Smith, 20 P. F. S., 450.

It has been said, however, on the authority of Goodsall v. Boldero, 9 East., 72, that an insurance upon the life of a debtor, in behalf of a creditor, is in legal effect but a guaranty of the debt, and if the debt is paid, the insurance is at an end; but it is now settled that this case is not the law; it was directly drawn in question and was expressly overruled in Dalby v. India & London Life Ins. Co., decided in the Exchequer Chamber, 15 C. B., 365. The law seems to be well settled that it is wholly unnecessary to prove an insurable interest in the life of the assured, at the maturity of the policy, if it was valid at its inception, and in the absence of express stipulation to the contrary, the sum expressed on the face of the policy is the measure of recovery: Rawls. v. American Mut. Ins. Co., 27 N. Y., 282; Mowry v. Home Ins. Co., 9 R. I. (1869); Hoyt v. New York Life Ins. Co., 3 Bosw., 440; Phœnix Mut. Ins. Co. v. Bailey, 13 Wall., 616.

The doctrine of all the cases to which our attention has been called is, that if the policy was originally valid, it does not cease to be so by cessation of interest in the subject of insurance; unless such be the necessary effect of the provisions of the instrument itself. Therefore, where a husband insured his life for the benefit of his wife, and was subsequently divorced, it was held, that notwithstanding the relation of husband and wife no longer existed, and her insurable interest had thus ceased, yet she could recover the full amount of the policy: Com. Mut. Life v. Schaffer, 4 Otto, 457. "Supposing a fair and proper insurable interest of whatever kind," says the Court in the case last cited, "to exist at the time of taking out the policy, and that it be taken out in good faith, the object and purpose of the rule which condemns wager policies is sufficiently attained; and there is then no good reason why the contract should not be carried out according to its terms." To the same effect is McKee v. Phœnix Co., 28 Mo., 383.

All the cases to which we have referred, it is true, arose

from suits brought upon the policies of insurance; but the same principles apply where the company, admitting its liability, has paid the money into Court to abide the result, and the controversy is between the remaining parties.

In our own case of Scott *v.* Dickson, 16 W. N. C., 181, our brother PAXSON, upon a review of the cases, concludes that where one has an insurable interest at the time an insurance is effected upon the life of another for his benefit, the fact that his interest ceases to exist at or prior to the death of the insured, will not, as against the personal representatives of the insured, deprive him of the right to receive the insurance money; therefore it was held that a surety on an official bond had an insurable interest in the life of the obligor, and that his right to recover upon the policy was not affected by the fact that no breach of the condition of the bond had ever occurred.

But a merely colorable, temporary, or disproportionate interest may present circumstances, from which want of good faith and an intent to evade the rule, may be inferred; therefore, although the relation of debtor and creditor may in general be said to establish an insurable interest, the amount of the insurance placed upon the life of the debtor cannot be grossly disproportionate to the benefit, which might reasonably be supposed to accrue from the continuance of the debtor's life, without leaving the transaction open to the imputation of being a speculation or wager upon the hazard of a life: Wainright *v.* Bland, 1 Moody & Rob., 481; Miller *v.* Eagle Life Co., 2 Smith, N. Y., 268.

The case of Cammack *v.* Lewis, 15 Wallace, 643, is exactly in point; the policy was taken out by Cammack, the creditor, upon the life of Lewis, his debtor, in the sum of $3,000— $2,000 for his own benefit, and $1,000 for the benefit of Lewis. Lewis, in fact, only owed Cammack $70, although he voluntarily and without consideration gave his obligation at the time for $3,000. "If the transaction," says Mr. Justice MILLER, "as set up by Cammack be true, then, so far as he was concerned, it was a sheer wagering policy, and probably a fraud on the insurance company. To procure a policy for $3,000 to cover a debt of $70 is of itself a mere wager. The disproportion between the real interest of the creditor and the amount to be received by him deprives it of all pretence to be a *bona fide* effort to secure the debt, and the strength of this proposition is not diminished by the fact that Cammack was only to get $2,000 out of the $3,000; nor is it weakened by the fact that the policy was taken out in the name of Lewis and assigned by him to Cammack. This view of the subject receives confirmation from the note executed by Lewis to Cammack

[Adams's Appeal.]

for the precise amount of the risk in the policy, which, if Cammack's account be true, was without consideration, and could only have been intended for some purpose of deception, probably to impose on the insurance company." See also Conn. Mut. Co. *v.* Lucks, 108 U. S. R., 498.

In the case at bar the policy was $2,000; the amount of the indebtedness was at the time undetermined, and therefore uncertain; it is since ascertained to have been between $500 and $750. Considering the character of their business relations, the unsettled condition of their affairs, the age of the subject of insurance, the probable amount of premiums which might accrue, the accumulation from interest, we could not say the transaction carries with it any inherent evidence of bad faith. The essential thing is, as stated by the learned judge of the Court below, that the policy should be obtained in good faith, and not for purposes of speculation upon the hazard of a life, in which the insured has no interest.

The case is materially different from Gilbert *v.* Moose's Admrs., 13 W. N. C., 489; the principles involved in that case are not drawn in question here.

We find no error in the decree of the Court below, and it is therefore affirmed.

> The decree is affirmed, and the appeal dismissed at the cost of the appellant.