## Gibbons' Estate.

Argued May 18, 1938.   Before KEPHART, C. J., SCHAF-
FER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Robert T. McCracken,* with him *Green & Quinn,* for
appellant.

*William I. Stanton,* with him *Alfred N. Keim,* for ap-
pellee.

OPINION BY MR. JUSTICE STERN, June 17, 1938:
Michael Gibbons left his residuary estate in trust to
pay the income to his wife for life, and after her death

to his five children and the issue of deceased children, share and share alike, the issue taking their parent's share by representation. If any child died without leaving issue, his or her share of the income was to be divided equally among the other children. It was held by this court (*Gibbons v. Connor*, 220 Pa. 395; *Gibbons v. Gibbons*, 235 Pa. 24) that the trust created by the will would last until the death of testator's last surviving child.

Michael Gibbons died in 1896, and his wife in 1903. In 1911 one of his children, Charles J. Gibbons, who was then receiving one-fourth of the income[1] but was indebted on judgments in an amount exceeding $50,000, executed an assignment of all his right, title and interest in and to the estate of his father[2] to Real Estate Title Insurance and Trust Company of Philadelphia (now merged in Land Title Bank and Trust Company), as trustee for the benefit of certain certificate holders who contributed $30,000 in the transaction. Of this sum approximately $23,000 was used to purchase the judgments against Charles J. Gibbons, which were thereupon restricted of record to his interest in the estate, and the balance was paid to him. At the same time he assigned to the Trust Company insurance policies which he took out upon his life in the sum of $30,000, the premiums, as they became due, to be paid by the trustee out of the income received from the estate. That income amounted to about $2,500 per annum.

Charles J. Gibbons died in 1916, without issue, and the trustee collected the amounts due on the policies and distributed the proceeds among the certificate holders. Of course, no further income was thereafter received by the trustee. Catherine Gibbons, the last surviving child, died in 1933, and the trust under the will then termi-

---

[1] Three of testator's children had died, two with, and one without, issue.

[2] The assignment also covered his interest in his mother's estate.

nated. In *Gibbons' Estate,* 317 Pa. 465, it was held that Michael Gibbons died intestate as to the corpus of the trust. Accordingly Land Title Bank and Trust Company, trustee for the certificate holders, now claims the interest of Charles J. Gibbons in the principal of the estate, the value of such share being appraised at approximately $60,000. This claim is resisted by his widow, Maude E. Gibbons, as administratrix of his estate. It is her contention that the trustee had no insurable interest in the life of Charles J. Gibbons, that the assignment of the policies was therefore void, that this tainted with illegality the entire transaction including the assignment of his share in his father's estate, and that that share should be paid to her, or, in the alternative, the trustee should receive only the excess of the value of such share over the proceeds, with interest, collected on the policies after deduction of the amount paid as premiums. The orphans' court rejected this contention and awarded the entire amount of the interest of Charles J. Gibbons in the estate of Michael Gibbons to the Trust Company as trustee for the certificate holders. Maude E. Gibbons, administratrix, appeals.

Several questions present themselves for consideration. Did the Trust Company, as trustee, acquire an insurable interest in the life of Charles J. Gibbons by virtue of the assignment of his interest in his father's estate, and, if so, in what amount would the law permit an assignment of insurance for the purpose of protecting such interest? Did the trustee, by reason of its purchase of the judgments against Charles J. Gibbons, and notwithstanding its subsequent restriction of them to his interest in the estate, obtain, as a creditor, an insurable interest in his life? If the assignment of the insurance policies were to be held illegal, would the assignment of the interest in the estate nevertheless remain unimpaired, and would that interest be recoverable in the present proceedings without diminution? Would the statute of limitations defeat appellant's claim,

twenty-one years having elapsed since the Trust Company received the insurance money? Is any right she otherwise might possess destroyed because of the fact that the proceeds of the policies were actually distributed by the Trust Company among the certificate holders? An affirmative answer to any of these questions would prevent a reversal of the decree of the court below, and in view of the conclusion we have reached in regard to the first of them it will be unnecessary to consider the others.

On May 17, 1921, the legislature passed the Insurance Company Law, P. L. 682, section 412 of which forbids any person from causing to be insured the life of another, unless the beneficiary named in the policy has an insurable interest in the life of the insured, and the term "insurable interest" is defined as meaning, "in the case of persons related by blood or law, an interest engendered by love and affection, and, in the case of other persons, a lawful economic interest in having the life of the insured continue, as distinguished from an interest which would arise only by the death of the insured." The transaction here in controversy occurred before the passage of that statute, but the definition quoted is but a broader expression of what in effect had been declared by the Pennsylvania cases: *United Security Life Insurance & Trust Co. v. Perugini Union Mutual Relief Association (No. 1)*, 273 Pa. 554, 557, 558; *Murray v. G. F. Higgins Co.*, 300 Pa. 341, 346. Several such cases, antedating the act, defined an insurable interest as one reasonably justifying an expectation of advantage or benefit from the continuance of the life of the insured, so that the purpose of the party effecting the insurance is to secure that advantage and not merely to place a wager upon the duration of human life: *Appeal of Corson*, 113 Pa. 438, 444, 445; *Keystone Mutual Benefit Association v. Norris*, 115 Pa. 446, 451; *U. B. Mutual Aid Society v. McDonald*, 122 Pa. 324, 330; *Carpenter v. United States Life Insurance Co.*, 161 Pa. 9, 16; *United*

*Security Life Insurance Co. v. Brown (No. 2),* 270 Pa. 271, 272.

The trustee for the certificate holders had a reasonable expectation of advantage or benefit from the continuance of the life of Charles J. Gibbons. In *Taussig v. United Security Life Insurance & Trust Co.,* 231 Pa. 16, it was held that no insurable interest was created by the assignment by the insured of a vested interest in remainder subject to a life estate in his mother, it being obvious that in such a case the assignee could not be pecuniarily affected by the time of the assignor's death. On the other hand it has been held—and it is equally clear—that where the assignment is merely of a life interest, the assignee *has* an insurable interest, since the amount of income to be received from the assigned estate depends directly upon the duration of the assignor's life: *Harvey's Estate,* 15 D. R. 298; *Gill's Estate,* 314 Pa. 558. In the present case, while Charles J. Gibbons owned both a life estate and a vested interest in remainder, the latter was not to come into possession immediately upon the termination of the former but only upon the death of the last surviving child of his father. As the situation existed at the time of the assignment, if Charles J. Gibbons should live to be the last surviving child, so that possession of his remainder interest would follow immediately upon his death, the estate which he assigned to the Trust Company would attain its maximum possible value; if, on the other hand, he should die long before the death of the last surviving child, there would be a correspondingly lengthy interregnum during which his assignee would receive no income. This, indeed, is what happened, because from his death in 1916 to the death of Catherine Gibbons in 1933, an interval of seventeen years, the Trust Company received nothing from the estate, and it was against this possibility, which became an actuality, of a prolonged gap occurring in the receipt of income that the insurance policies were designed to protect the certificate holders. At

a net income rate of about $1,500 per annum (the gross income less expenses and insurance premiums), the premature death of Charles J. Gibbons resulted in their being deprived of approximately $25,000 which they would have received had he lived as long as his sister Catherine. This in itself demonstrates that the amount of insurance which accompanied the assignment was justified: *Appeal of Corson*, 113 Pa. 438, 449; *Grant's Administrators v. Kline*, 115 Pa. 618; *Ulrich v. Reinoehl*, 143 Pa. 238; *Wheeland v. Atwood*, 192 Pa. 237.

Decree affirmed; costs to be equally divided between the parties.