## Clayton *v.* Industrial Life Insurance Company et al., Appellants.

Argued October 3, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Ralph S. Croskey,* with him *James L. Rankin* and *Croskey & Edwards,* for appellants.

*J. Harold Hughes,* for appellee.

OPINION BY ROSS, J., January 8, 1948:

These appeals are from refusal of the court below to enter judgment n. o. v. for the defendants after verdicts of the jury for the plaintiff, the beneficiary of a life insurance policy and of a beneficial certificate. The cases were tried together and will be treated as one appeal, the evidence being the same and the same question

being involved: Did the plaintiff have an insurable interest in the life of the insured, her blood uncle?

Prior to 1914 and until 1934, the insured resided with the plaintiff and her husband and their children in the city of Chester. The insured disappeared in 1934, was not heard from thereafter and his death was proved by seven years' unexplained absence. The policy on the life of her uncle was issued to the plaintiff on March 2, 1914, and she paid the premiums thereon until May 3, 1946.

Article IV, section 412 of the Insurance Company Law of 1921, P. L. 682, 40 PS 512, provides in part as follows: ". . . no person shall cause to be insured the life of another, unless the beneficiary named in such policy . . . has an insurable interest in the life of the insured. The term 'insurable interest' is defined as meaning, in the case of persons related by blood or law, an interest engendered by love and affection, and, in the case of other persons, a lawful economic interest in having the life of the insured continue, as distinguished from an interest which would arise only by the death of the insured". Before the enactment of this statute insurable interest had been defined as one reasonably justifying an expectation of advantage or benefit from the continuance of the life of the insured, so that the purpose of the party effecting the insurance is to secure that advantage and not merely to place a wager upon the duration of human life, and the statutory definition is but a broader expression of what in effect had prior thereto been the law in Pennsylvania. *Gibbons' Estate,* 331 Pa. 36, 200 A. 55.

In this case, the jury in addition to returning a verdict in favor of the plaintiff, answered in the affirmative the following questions submitted to it: "Did Helen Clayton have an interest engendered by love and affection in the life of her uncle, Robert Berry?" and "Did Helen Clayton have a lawful economic interest in having the life of her uncle, Robert Berry, continue?" The

insurable interest of a beneficiary in the life of an insured may properly be submitted to the jury (*McGraw v. Metropolitan Life Ins. Co.,* 5 Pa. Superior Ct. 488) although if the evidence showing the relationship of the parties is not disputed, it is for the court to say whether an insurable interest exists. *U. S. Life Ins. & Trust Co. v. Brown (No. 2),* 270 Pa. 270, 113 A. 446.

The jury's finding that love and affection existed between the insured and the beneficiary is amply supported by the evidence but the defendant contends that such love and affection does not "engender" an insurable interest, that the love and affection which will give rise to an insurable interest is limited to the relationship between husband and wife and parent and child or where there exists an in loco parentis relationship. In all cases there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the insured but between husband and wife, and parent and child, the relationship is so close and intimate, and the mutual dependence and legal liability for support so manifest, that nothing more is wanting to establish the insurable interest. *Appeal of Corson,* 113 Pa. 438, 6 A. 213. The plaintiff had no insurable interest in the life of her uncle by virtue of the relationship alone (*Appeal of Corson,* supra; *U. S. Life Ins. & Trust Co. v. Brown (No.1),* 270 Pa. 264, 113 A. 443), but she does not rely on her relationship to establish her insurable interest. The facts in this case show that she could expect some benefit or advantage from the continuance of the life of her uncle and the blood relationship and the love and affection between them are important as tending to show that the relationship in the home that had existed for more than twenty years would continue.

Prior to the issuance of the policy in 1914, the plaintiff's husband was required to work at night and, after

someone tried to break into their house while he was at his work, the insured was asked to come in in the evenings as company for the wife and children and later on he was requested to live with them, which he did "as one of the family" until his disappearance twenty years later. During that time the insured "would do anything he could to help" the beneficiary and her family. He did chores about the house and assisted in the raising of the children, looking after them and preparing their meals when the plaintiff was not there. He took care of the fires, cleaned the snow from the sidewalk, ran errands and was a companion and protection in the evenings. Because of the assistance given by him, the plaintiff was enabled to go out and do housework, thereby earning money, but after the insured's disappearance it was impossible for her to continue to do day work and in addition she lost the assistance of the insured in the many services around the house which he had performed during his lifetime. Clearly, if the insured had over a period of twenty years furnished money to the beneficiary to enable her to employ a companion for her and her children while the husband was at his nighttime work, a maid to help with the housework, a handyman to shovel snow, keep the fires burning, and do odd chores around the house, a nurse to stay with the children so that the plaintiff could do "day work"—or one person to perform all these services—it could not be contended that she did not have a "lawful economic interest" in the continuance of her uncle's life. Here instead of furnishing the money for these services, he himself performed them.

Under the evidence in this case, there was reasonable and substantial ground for the plaintiff to expect "advantage or benefit from the continuance of the life of the insured" and, therefore, she had a "lawful economic interest" in having his life continue.

Judgments affirmed.