# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3535

_____

| | | |
|---|---|---|
| Clarendon National Insurance Company, | * * * | |
| Appellee, | * * | |
| v. | * * * | Appeal from the United States District Court for the Eastern District of Arkansas. |
| United Fire & Casualty Company, | * * * | |
| Appellant. | * | |

_____

Submitted: June 11, 2009
Filed: July 2, 2009

_____

Before BYE, HANSEN, and BENTON, Circuit Judges.

_____

BYE, Circuit Judge.

This is a declaratory judgment action brought to determine the priority of coverage between certain insurance policies covering a leased vehicle. Clarendon National Insurance Company (Clarendon) insured the owner of the vehicle, while United Fire & Casualty Company (United Fire) insured the lessee. The district court[1] determined United Fire's policy provided primary coverage. The district court further

_____

[1]The Honorable William R. Wilson, United States District Judge for the Eastern District of Arkansas.

determined the umbrella policy United Fire issued to the lessee would also be considered primary to the policy Clarendon issued to the vehicle's owner. We affirm.

## I

McCormick Painting Company (McCormick) owned a 1996 Volvo truck, which it leased to Arkansas Painting and Specialties, Inc (Arkansas Painting). The lease contained an indemnity clause which stated:

> [Arkansas Painting] shall indemnify [McCormick] against, and hold [McCormick] harmless from, any and all claims, actions, suits, proceedings, costs, expenses, damages, and liabilities, including attorneys fees, arising out of, connected with, or resulting from the equipment of the Lease, including, without limitation, the . . . use [or] operation of the equipment. [Arkansas Painting] recognizes and agrees that included in this indemnity clause . . . is [Arkansas Painting's] assumption of any and all liability for injury[,] disability and death of workmen and other persons caused by the operation, use, control, handling, or transportation of the equipment during the Rental Period.

App. at 10.

The lease agreement was in effect on August 28, 2007, when Gary Dixon, an Arkansas Painting employee, was driving the Volvo truck and collided with vehicles driven by Jason Miller and Stephanie Gray. Both Miller and Gray were injured; Gray was seriously injured. Both Miller and Gray are represented by counsel and seek damages for the accident, although no lawsuit has yet been filed.

At the time of the accident, the 1996 Volvo truck was covered by an insurance policy Clarendon issued to the truck's owner, McCormick. The truck was also covered by an insurance policy United Fire issued to the truck's lessee, Arkansas

Painting. Both policies have identical "other insurance" clauses which provide in relevant part:

> a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance.
>
> . . .
>
> c. Regardless of the provisions of Paragraph a. above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract."

Id. at 30, 231.

The policies also have identical definitions for an "insured contract," which state in relevant part an "insured contract" is:

> 5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;
>
> 6. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease by you or any of your "employees" of any "auto." However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees."

Id. at 32, 233. The Volvo truck was also covered by a second policy United Fire issued to Arkansas Painting, written as an umbrella policy to provide excess coverage

for the underlying policy United Fire issued to Arkansas Painting. Both Clarendon and United Fire have incurred defense costs related to the accident.

Clarendon filed suit against United Fire in federal district court seeking a declaration that the policy covering McCormick, the truck's owner, should be considered excess to any policies issued by United Fire to Arkansas Painting, the truck's lessee. The parties brought cross motions for summary judgment.

The district court granted Clarendon's motion for summary judgment, concluding the lease agreement between McCormick and Arkansas Painting was an "insured contract" under both paragraphs 5 and 6 of the policies – under paragraph 5 because Arkansas Painting assumed all liability arising out of use of the truck pursuant to the lease's indemnity clause, and under paragraph 6 because the lease pertained to the lease of an automobile. Because both policies stated their coverage was primary for any liability assumed under an "insured contract," the district court determined United Fire's policy provided the primary coverage for the accident involving the Volvo truck.

Applying Wal-Mart Stores, Inc. v. RLI Ins. Co., 292 F.3d 583 (8th Cir. 2002), the district court further determined United Fire's umbrella policy would be triggered before Clarendon's policy.

United Fire filed a timely appeal to this court. On appeal, United Fire argues this case is not ripe for adjudication because the parties injured in the accident have not yet sued. Assuming the case is ripe, United Fire further contends a person's mere status as the owner of a vehicle is not a basis for liability under Arkansas law, and thus Clarendon cannot show McCormick is liable for this accident involving its Volvo truck. As a result, United Fire contends the indemnity clause in the lease agreement was never triggered (i.e., McCormick has no liability for Arkansas Painting to assume) and thus the agreement does not qualify as an "insured contract" under the terms of

-4-

United Fire's policy. Finally, United Fire claims the district court erred in determining its umbrella policy would be triggered before Clarendon's policy.

II

We review the district court's grant of summary judgment, and its interpretation of state insurance law, de novo. Thornton Drilling Co. v. Nat'l Union Fire Ins. Co., 537 F.3d 943, 945 (8th Cir. 2008).

United Fire first argues there is no actual controversy between itself and Clarendon and this case is not ripe for adjudication because there has been no lawsuit filed against McCormick, and thus no judgment has been entered to trigger the indemnity clause in the truck lease. As the district court noted, however, Clarendon demanded United Fire indemnify McCormick pursuant to the lease, and United Fire in turn requested Clarendon to be fully involved in the defense of any suit brought by the two parties injured in the accident involving the Volvo truck. In addition, both Clarendon and United Fire have incurred defense costs related to the accident.

United Fire's demand for Clarendon to be involved in the defense of the anticipated suits by the injured parties is enough to create an actual controversy and give Clarendon the right to bring a declaratory judgment action determining priority of coverage. See Aetna Cas. and Sur. Co. v. Gen. Dynamics Corp., 968 F.2d 707, 711 (8th Cir. 1992) (recognizing a live justiciable controversy over a declaratory judgment action where an insured "made a clear demand for payment of defense and indemnity costs" against its insurer even though "no suits had yet been filed nor any settlements reached[.]"); see also Am. States Ins. Co. v. Bailey, 133 F.3d 363, 368 (5th Cir. 1998) ("An actual controversy may exist when an insurance carrier seeks a declaratory judgment that it has a duty neither to defend nor indemnify its insured in a state court action that has not yet proceeded to judgment."). We see no reason why this principle, applicable between an insurer and its insured, should not also apply to

a coverage dispute between two insureds where one has demanded the other be fully involved in the defense of claims arising from an accident, there are injured parties represented by counsel seeking damages covered by the respective policies, and both insureds have incurred defense costs related to the accident.

United Fire next contends pursuant to Arkansas law, a party cannot be sued due to its mere status as the owner of a vehicle, and thus McCormick has no liability to either Gray or Miller, the two parties injured by Dixon (Arkansas Painting's employee). From this premise, United Fire argues it follows that the lease's indemnity clause is not triggered because Arkansas Painting has no tort liability to assume. As a result, United Fire contends the lease agreement does not qualify as an "insured contract" and the policy language making United Fire's coverage "primary for any liability assumed under an 'insured contract'" is not applicable.

We need not address all the different prongs of United Fire's argument in order to reject it. It is enough to recognize that, under the terms of the broad indemnity clause in the lease agreement, Arkansas Painting assumed responsibility for "*any and all liability* for injury . . . caused by the operation, use, control, handling, or transportation of the [truck]." App. at 10 (emphasis added). This broad assumption language encompasses not only any liability McCormick may have as the owner of the truck, but also any liability Arkansas Painting may have as the lessee of the truck, as well as any liability Dixon may have as the driver of the truck. Thus, the policy term making United Fire's coverage "primary for any liability assumed under an 'insured contract'" necessarily includes the liability at issue in this case – not limited to McCormick's potential liability – so long as the lease agreement itself qualifies as an "insured contract."

Under the definition section of United Fire's policy, the lease agreement between McCormick and United Fire clearly qualifies as an "insured contract." Section V.H.6 of the policy defines an "insured contract" in part as "any contract or

agreement entered into, as part of your business, pertaining to the rental or lease, by you . . . of any 'auto'." App. at 233. It is beyond dispute the lease agreement involved here is a contract entered into by Arkansas Painting pertaining to the rental or lease of an auto.[2] As a result, the district court was correct when it concluded United Fire's policy provided the primary coverage for this accident.

Finally, United Fire contends the district court erred when it concluded United Fire's umbrella policy would also be triggered before Clarendon's policy. We disagree. The broad protection extended to McCormick in the indemnity agreement with Arkansas Painting also extends to McCormick's insurance carrier, Clarendon. Wal-Mart Stores, 292 F.3d at 589 (applying Arkansas law). As a consequence, any

---

[2]United Fire argues the lease agreement is not an "insured contract" under section V.H.5 because the reference therein to "assum[ing] the tort liability of another" is limited to McCormick's tort liability, and McCormick has no tort liability in this case. Because the lease agreement clearly qualifies as an "insured contract" under section V.H.6 of the policy, we do not address this argument.

As an aside, however, we note United Fire's arguments, if accepted, would mean Clarendon would provide primary coverage only in those situations where its named insured, McCormick, *could not* be found at fault, while United Fire would provide no coverage even though it covered the at-fault party. This would be a perverse result inconsistent with both policies' apparent intent to provide primary coverage when a named insured enters into an indemnification agreement, i.e., insured contract, with another party. See generally Multi-Craft Contractors Inc. v. Perico Ltd., 239 S.W.3d 33, 41-42 (Ark. Ct. App. 2006) ("[C]ontracts of insurance should receive a practical, reasonable, and fair interpretation, consonant with the apparent object and intent of the parties in light of their general object and purpose.").

of the policies covering Arkansas Painting, as the indemnitor, must be triggered before McCormick's insurer is responsible.  Id.

Like this case, the dispute in Wal-Mart Stores dealt with an excess carrier who insured an indemnitor, and a so-called "primary" carrier who insured an indemnitee. The excess carrier argued its status as an "excess" carrier should trump the indemnity agreement entered into by its insured, such that all policies which could be considered "primary" should be triggered before any "excess" policies.  We rejected that argument:

> RLI contends that none of these cases is apposite because they deal with two insurers on the same level (i.e., both primary) suing on claims for contribution or allocation, and RLI characterizes the present dispute as arising between an excess insurer (itself) and a primary insurer (National Union).  We reject RLI's contention. The above-discussed cases are disputes about whether indemnity agreements relieve particular insurers of an obligation to pay.  This is the heart of what this suit is about.  It is a declaratory-judgment action by Wal-Mart and National Union seeking a determination that the indemnity agreement prevents them from being liable.  Whether the parties are termed "primary" or "excess" depends on who is required to pay first, and that is the question presented here.  The answer to this question, however, depends on the indemnity agreement because of its effect on the obligations of the parties.  In this situation, RLI cannot avoid liability for the settlement by pointing to language in its policy calling itself "excess." RLI is "excess" to National Union only if we determine that National Union is liable first, and, as explained above, we do not do so because we believe the indemnity agreement governs.

Id. at 590.

Wal-Mart Stores is directly on point, and controls the outcome in this case.  The district court correctly determined the policy issued by Clarendon was excess to both policies issued by United Fire.

## III

We affirm the judgment of the district court in all respects.

_____