# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2741

_____

Country Life Insurance Company,    *
                                          *

         Plaintiff-Appellee,    *

                                          *

Auto-Owners Life Insurance Company,    *

                                          *   Appeal from the United States

         Plaintiff,    *   District Court for the

                                          *   Western District of Missouri.

     v.    *

                                          *

Johno F. Marks; Debbie Marks,    *

                                          *

         Defendants-Appellants.    *

_____

Submitted: September 24, 2009
Filed: January 27, 2010

_____

Before BYE, ARNOLD, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

This is a dispute over the death benefits on an insurance policy issued by Country Life Insurance Company (Country Life) to Johno and Debbie Marks insuring the life of Connie B. Romig. Country Life filed this declaratory judgment action seeking, in part, a determination the policy was void on the grounds the Markses had no insurable interest in Romig's life. The district court granted Country Life's motion

for summary judgment concluding the Markses did not have an insurable interest as a matter of law. We reverse and remand for further proceedings.

I

In this appeal from a grant of summary judgment, we must view the evidence in the light most favorable to the Markses and give them the benefit of all reasonable inferences to be drawn from the evidence. Turner v. Iowa Fire Equip. Co., 229 F.3d 1202, 1204 (8th Cir. 2000). Viewed in such a light, the record discloses the following:

Connie Romig was a close friend of Johno Marks's parents and was present at most all of his family gatherings while he was growing up. Johno knew her from the time he was a baby until her death and had always referred to her as "Aunt Connie" in his dealing with her. In fact, Johno did not learn as to Romig not being his biological aunt until early in his adult life.

The Markses have been married for over thirteen years and have three children – Vincent, Angelina and Adrianna. Vincent suffers from a medical condition called Charcot-Marie-Tooth (CMT), a nerve disorder which causes muscle atrophy and weakness. As a consequence, the Markses incurred extra medical and travel expenses because of Vincent's condition resulting from trips to medical specialists. After the birth of their children, the couple's relationship with Romig became even closer than previously, and they would see her with considerable frequency. The Markses saw Romig on an almost daily basis during the last nine years of her life.

Romig helped support the Marks family in a variety of ways. She provided the couple with cash to assist in the expenses they incurred while traveling with their son, Vincent. She did most of the family's grocery shopping, not only donating her time and travel to the effort, but also paying for the groceries. She also frequently paid the

family's rent, which was $1,000.00 per month, as well as the family's utility bills. In addition, Romig gave Johno and Debbie extra money on a regular basis, telling them she would always do what she could to help and take care of them. Romig also helped Johno in his automobile business, picking up and dropping off cars for him, giving Johno rides to and from the dealership, helping him if a car broke down, and dropping him off at car auctions. Romig did all this for free, never asking for or receiving any compensation for all she did to assist the family financially.

Romig's husband passed away in 2005 without any life insurance. As a result of that incident, she obtained life insurance naming the Markses as beneficiaries so that when she passed away the Marks's children would be taken care of, especially Vincent because of his medical issues.

In February 2006, Romig and the Markses visited an insurance agent for Auto-Owners Insurance[1] to obtain life insurance. She submitted to a medical examination at the request of Auto-Owners, which took place in the Marks's home. A follow-up visit took place in Romig's home where neither Johno or Debbie were present.

Because of delays in obtaining the Auto-Owners policy, the insurance agent suggested Romig visit an agent for Country Life. She was advised Country Life could provide a policy providing twice the death benefit as the Auto-Owners policy for about the same premium, so she sought a policy from Country Life while waiting for approval on the Auto-Owners policy. Romig submitted to a medical examination at the request of Country Life. On April 25, 2006, Country Life issued the Markses a life insurance policy on Romig's life, naming the couple as both owners and beneficiaries of the policy, and the Markses thereafter paid the premiums as they became due under the terms of the policy.

---

[1]This appeal included a claim involving a second life insurance policy issued by Auto-Owners. That claim was settled while this appeal was pending and is no longer at issue.

Romig was healthy, strong, and insurable when the two life insurance policies were issued, but did become ill and was eventually hospitalized in October 2006. She passed away on November 29, 2006. Country Life and Auto-Owners denied the Marks's claims for death benefits on the grounds the couple had no insurable interest in Romig's life and refunded the premiums the couple had paid. Both insurance companies filed this declaratory judgment action. The district court granted summary judgment in favor of the insurers and this appeal followed, with Auto-Owners settling its claim while the appeal was still pending. The claim involving the Country Life insurance policy remains the central focus of this litigation.

II

We review de novo both the district court's grant of summary judgment and its interpretation of state insurance law. Clarendon Nat'l Ins. Co. v. United Fire & Cas. Co., 571 F.3d 749, 752 (8th Cir. 2009).

The Markses were the beneficiaries and owners of the life insurance policy issued by Country Life. This dual beneficiary/owner role is distinct from a situation where an insured owns a policy, pays the premiums, and has the right to name whomever the insured desires as a beneficiary. Because the Markses were both beneficiaries and owners of the Country Life policy, they had to prove they had an insurable interest in the life of the insured, otherwise the policy would be unenforceable. See Lakin v. Postal Life & Cas. Ins. Co., 316 S.W.2d 542, 550, 552 (Mo. 1958). To establish an insurable interest under Missouri law, a party is required to show a benefit or advantage from the continuance of the life of the insured. Id. at 549. An insurable interest can be based upon three different types of relationships – a pecuniary relationship, a blood relationship, or a relationship based upon affinity (i.e., marriage). Id.

-4-

The Markses did not have a blood or marriage relationship with Romig, so the existence of an insurable interest turned instead upon whether there was a pecuniary relationship between them. To establish an insurable interest based upon a pecuniary relationship, "there must be 'a reasonable probability that [the beneficiary] will gain by the [insured's] remaining alive or lose by [her] death.'" Hershberger v. Young, 59 S.W.3d 614, 622 (Mo. Ct. App. 2001) (quoting Poland v. Fisher's Estate, 329 S.W.2d 768, 772 (Mo. 1959)). "Stated another way, 'any reasonable expectation of pecuniary benefit or advantage from the continued life of another creates an insurable interest in such life.'" Id. at 622-23 (quoting Alexander v. Griffeth Brokerage Co., 73 S.W.2d 418, 423 (Mo. Ct. App. 1934)). Whether a party has an insurable interest due to a pecuniary interest is a question of fact when the parties dispute (as they do here) the basis for the pecuniary interest. See Vette Co. v. Aetna Cas. & Sur. Co., 612 F.2d 1076, 1078 (8th Cir. 1980) (applying Missouri law).

The Markses contend the disputed facts regarding their relationship with Romig, when viewed in the light most favorable to them, show they had a reasonable expectation of a pecuniary benefit or advantage from Romig remaining alive, making summary judgment inappropriate. We agree.

As an initial matter, we disagree with Country Life's contention Missouri law categorically limits a pecuniary interest in another's life to situations involving: 1) a business enterprise's pecuniary interest in the life of its manager; 2) an insured and beneficiary's common interest in a business association; 3) a business partner's pecuniary interest in the life of a partner; 4) a business owner's pecuniary interest in the life of a customer; or 5) a creditor's pecuniary interest in the life of a debtor. Missouri, like other states which follow the common law rule, indulges "great liberality" in determining whether an insurable interest exists by virtue of a pecuniary relationship. O'Donnell v. MFA Ins. Co., 671 S.W.2d 302, 305 (Mo. Ct. App. 1984) (quoting 44 C.J.S. Insurance § 175). Although the sort of benefactor-type relationship between Romig and the Markses has not been the subject of a prior Missouri case,

other jurisdictions which follow the same common law rules as Missouri have recognized an insurable interest under analogous facts (discussed below). Thus, if the relationship between them satisfies the general test for creating an insurable interest (i.e., any reasonable expectation of pecuniary benefit or advantage from the continued life of another), we conclude Missouri courts would recognize it.[2]

In Drane v. Jefferson Standard life Ins. Co., 161 S.W.2d 1057 (Tex. Comm'n App. 1942), the court recognized a godson had an insurable interest in his unrelated godmother based upon a benefactor-type relationship. The godmother bought clothes for her godson for fifteen years, drove her godson to see an eye specialist for numerous visits over a two-year period after he sustained an eye injury, provided a home for him during a thirty-one month period while his mother was afflicted with tuberculosis, gave him a set of furniture, picked him up from high school on a daily basis, and took him on vacations. Id. at 1059. In addition, the godson was born in the godmother's home, and he called her "Auntie" all his life. Id. "When she met her death she was on her way to see him at College Station, where he was a freshman student at A. & M., and was taking him a radio, a cap and an apple pie." Id.

Similarly, in Reed v. Smith, 120 S.W.2d 302 (Tex. Civ. App. 1938), the court recognized Willis Smith had an insurable interest in the life of Frank Reed, an unrelated man who had previously been married to Smith's mother (making Reed Smith's former stepfather). Although the divorce ended the stepparent relationship, Smith and Reed maintained a close relationship. The court relied upon the continuing benefactor-type relationship to conclude Smith had an insurable interest in Reed's life. Specifically, Reed allowed Smith to live in his home after she married, paid the medical expenses for a baby girl she bore, referred to the baby as his granddaughter,

_____

[2]The Markses concede their pecuniary interest must be more than de minimis in order to give rise to an insurable interest. The facts, when viewed in the light most favorable to the Markses, suggests the couple had more than a de minimis pecuniary interest in the continued life of Connie Romig.

bought his "daughter" and "granddaughter" clothes, gave money to her and her disabled husband to engage in business, wrote her a letter indicating he hoped to use a back-wages recovery from his employer to buy her an automobile, and expressed a desire to see to it that his "granddaughter" was educated. Id. at 305. In recognizing Smith had an insurable interest in Reed's life, the court said "it would be difficult to imagine a case where one, not related within the accepted degrees of affinity and consanguinity, would be entitled to recover on such a policy, unless the facts of this case warrant such a recovery." Id.

Finally, in Clayton v. Industrial Life Ins. Co., 56 A.2d 292 (Pa. Super. Ct. 1948), the court recognized a niece had an insurable interest in her uncle. Significantly, the court noted the blood relationship between the two gave the niece "no insurable interest in the life of her uncle by virtue of the [blood] relationship alone," id. at 293, because under the common law insurable interests based on consanguinity must be closer than the relationship between aunts and uncles/nieces and nephews, e.g., Singleton v. St. Louis Mut. Ins. Co., 66 Mo. 63 (Mo. 1877) (1877 WL 9218 at *2).

The facts in Clayton show the uncle lived in his niece's home "as one of the family" for twenty years, did chores about the house, looked after his niece's children, prepared their meals occasionally, took care of fires, cleaned snow from the sidewalk, and ran errands. The uncle started living in his niece's home because her husband worked at night and someone tried to break into her home while her husband was gone, so the uncle provided the niece with a sense of security and protection. The court stated:

> Because of the assistance given by him, the plaintiff was enabled to go out and do housework, thereby earning money, but after the insured's disappearance it was impossible for her to continue to do day work and in addition she lost the assistance of the insured in the many services around the house which he had performed during his lifetime. Clearly,

if the insured over a period of twenty years furnished money to the beneficiary to enable her to employ a companion for her and her children while the husband was at his nighttime work, a maid to help with the housework, a handyman to shovel snow, keep the fires burning, and do odd chores around the house, a nurse to stay with the children so that the plaintiff could do 'day work' – or one person to perform all these services – it could not be contended that she did not have a 'lawful economic interest' in the continuance of her uncle's life. Here instead of furnishing the money for those services, he himself performed them.

Clayton, 56 A.2d at 293-94.

When viewed in the light most favorable to the Markses, the financial support and other services provided by "Aunt Connie" to the Markses over the course of the last nine years of her life is very similar to the gifts and support provided by the "Auntie" godmother in Drane and by the former stepfather in Reed, and to the services performed by the uncle for his niece in Clayton. In each of these benefactor-type relationships, the courts recognized an insurable interest based on a pecuniary relationship. We therefore conclude there is an issue of material fact as to whether the pecuniary relationship between Romig and the Markses was sufficient to create an insurable interest, making summary judgment inappropriate.[3]

III

We reverse and remand for further proceedings.

_____

[3]Country Life urges us to affirm the district court on the alternative ground that the Markses did not pursue the policy in good faith because they represented on the policy's application they were Romig's niece and nephew-in-law. A niece/aunt relationship, standing alone, does not create an insurable interest, so there is a question whether the representation was material. We express no opinion on such issue, leaving it for the district court on remand.